## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| LISA LYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-01812-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| GREYHOUND LINES, INC., "JOHN DOE" | ) | |
| UNIDENTIFIED EMPLOYEES AND | ) | |
| AGENTS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on plaintiff Lisa Lyman's ("Lyman")

motion to compel, ECF No. 17. For the reasons set forth below, the court grants in part

and denies in part the motion.

## I.  BACKGROUND

This case arises out of alleged injuries suffered by Lyman on May 10, 2017 while

traveling from Charleston, South Carolina to Omaha, Nebraska on defendant Greyhound

Lines, Inc.'s ("Greyhound") commercial passenger bus. Lyman suffers from cerebral

palsy, and, as a result of her congenital disability, she has been wheelchair-dependent for

the majority of her life.

Lyman's first alleged injury occurred on the Atlanta, Georgia to St. Louis,

Missouri segment of her trip. According to Lyman, she was denied reserved priority

seating by Greyhound employees when boarding and required to travel in her wheelchair.

Greyhound employees positioned Lyman in an area of the bus designated for wheelchair

passengers but improperly secured her wheelchair to the bus floor. Twice during travel,

she alleges, the straps used to secure her chair came loose. In the first instance, her travel

1

companion caught the chair before any collision.  In the second instance, the unsecured row of folding seats behind Lyman slammed into Lyman's wheelchair when the bus driver applied the brakes.  The momentum of the folding seats pushed Lyman's wheelchair forward and pinned her against the row of seats in front of her for approximately two hours.

Lyman's second injury occurred in St. Louis, Missouri when a Greyhound employee, Willie Roberts ("Roberts"), attempted to re-board Lyman onto the bus via the bus's platform lift system.  Lyman alleges that when the platform rose to the level of the bus floor, Roberts pushed the front wheels of Lyman's wheelchair in an attempt to roll the chair backwards onto the bus.  However, instead of guiding Lyman onto the bus, the push caused the wheelchair to flip over backwards, which resulted in Lyman hitting her head on the bus floor.

On May 8, 2020, Lyman filed the instant action against Greyhound and John Doe unidentified employees and agents (together, "defendants"), alleging negligence, negligent hiring, and negligent training.  ECF No. 1, Compl.  On December 4, 2020, Lyman filed a motion to compel.  ECF No. 17.  On December 18, 2020, defendants responded, ECF No. 19, and on December 29, 2020, Lyman replied, ECF No. 23.  The court held a telephonic hearing on the motion on February 9, 2021.  As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

A party to litigation may issue a subpoena for the production of discoverable material to a non-party to the litigation.  See Fed. R. Civ. P. 45.  "The scope of discovery for a nonparty litigant under a subpoena duces tecum issued pursuant to Rule 45 is the

same as the scope of a discovery request made upon a party to the action under Rule 26." Alston v. DIRECTV, Inc., 2017 WL 1665418, at *2 (D.S.C. May 3, 2017). In other words, the scope of discovery allowed under a Rule 45 subpoena is equivalent to the scope of discovery allowed under Rule 26. HDSherer LLC v. Nat'l Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. 2013).

"The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 526 (D.S.C. 2018). Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information sought is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" Ferira v. State Farm Fire & Cas. Co., 2018 WL 3032554, at *1 (D.S.C. June 18, 2018) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "[I]t is well understood that pursuant to Rule 26(b)(1) relevancy is construed very liberally." Nat'l Credit Union Admin. v. First Union Capital Markets Corp., 189 F.R.D. 158, 161 (D. Md. 1999). In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of

3

Ga., 852 F.2d 788, 792 (4th Cir. 1988)).  As such, whether to grant or deny

a motion to compel is generally left within the district court's "substantial discretion in

managing discovery."  Lone Star Steakhouse & Saloon, Inc. v. Alpha Va., Inc., 43 F.3d

922, 929 (4th Cir. 1995).

### III.  DISCUSSION

Lyman asks the court to compel defendants to supplement their production in

response to three requests for production of documents—Request Nos. 6, 11, and 12—

and to supplement their responses to three interrogatories—Interrogatories 5, 11, and 12.

The court addresses each request in turn below.

### A.  Request for Production No. 6

Lyman's Request for Production No. 6 asks defendants to provide the following

documents:

> Copies of all accident reports, investigative reports, and documents
> concerning every accident involving a wheelchair, wheelchair loading
> device, or wheelchair securement on Greyhound buses for the past ten (10)
> years.

ECF No. 17-1 at 6.  Defendants object to the request as "overly broad, unduly

burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence."

ECF No. 19 at 4.  Specifically, defendants argue that the request is irrelevant because

"every accident involving a wheelchair" encompasses scenarios that do not involve

negligence, such as a passenger merely tripping over a wheelchair.  As such, defendants

ask for a "more tailored [r]equest."  ECF No. 19 at 6.  Defendants also argue that

Greyhound is a national common carrier that serves more than 3,800 destinations across

North America, such that seeking discovery of all documents that concern every accident

involving a wheelchair for the past ten years would be an excessive burden on

defendants.

Lyman, on the other hand, argues that the request is relevant to her allegation that

Greyhound was negligent in failing to adequately train its employees. Lyman explains

Greyhound employees responsible for her injuries received the same training as those

involved in prior similar accidents, such that Request for Production No. 6 is relevant to

issues of knowledge, notice, foreseeability, standard of care, and training. She also

argues that the ten-year timeframe is warranted, citing Donovan v. Wal-Mart Stores, Inc.,

2012 WL 3025877 (D.S.C. July 24, 2012). In Donovan, a case likewise involving claims

of negligent training and supervision, the court granted discovery requests relating to

prior accidents similar to the one suffered by the plaintiff but limited the timeframe to

five years prior to the alleged incident. Id. at *2. Lyman argues that her request is

comparable to the timeframe granted in Donovan because it encompasses approximately

six years prior to her alleged injury, albeit also four years after her injury.

The court finds Lyman's Production Request No. 6 relevant to Lyman's claim of

negligent training. "[C]ourts have found it appropriate to compel disclosure of similar

claims or incidents across a national geographic scope where the discovery was relevant

to matters such as notice or knowledge or the implementation of a company-wide policy

related to the relevant claim or incident." Donovan, 2012 WL 3025877, at *2; see Deitz

v. Pilot Travel Centers, LLC, 2015 WL 5031229, at *2 (S.D.W. Va. Aug. 25, 2015)

("Courts in this circuit and in sister circuits have held that discovery related to other

accidents, incidents, claims, and lawsuits involving a party to the litigation is relevant in a

personal injury action when the discovery is reasonably designed to lead to admissible

evidence on issues such as notice, knowledge, foreseeability, standard of care, and damages."). To be relevant, the discovery sought simply must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenhiemer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Lyman alleges that Greyhound was negligent in failing to adequately train its employees to operate the wheelchair lift system, to secure wheelchairs for travel, to secure the folding chairs, and to prevent the foreseeable risk to Lyman. In a negligent training case, "the key question is whether the employer knew or should have known of the danger the employee posed to others." Snowden v. United Rentals (N. Am.) Inc., 2015 WL 5554337, at *8 n.6 (D.S.C. Sept. 21, 2015). The existence of other accidents involving wheelchairs on Greyhound buses bears directly on the issue of whether Greyhound knew or should have known of the danger posed by failing to properly train employees in these respects. See Holcombe v. Helena Chem. Co., 238 F. Supp. 3d 767, 773 (D.S.C. 2017). However, the court agrees with defendants that the request is overly broad and should be limited to only those prior accidents that are similar to Lyman's alleged experience. As such, the court compels defendants to respond to Lyman's request to the extent it seeks documents related to accidents that resulted in injury to wheelchair-bound passengers in connection with wheelchair loading and wheelchair securement.

The request, as limited, does not pose an undue burden on defendants. Defendants do not provide any affidavits or other evidence outlining the anticipated time and resources that would be involved in gathering the information. Indeed, defendants argue that Lyman does not have "first[-]hand knowledge" of whether Greyhound has an "easily searchable database," but provides no information about the existence of such a

database or how the requested information may be stored. ECF No. 19 at 5. Defendants

likewise provide no information regarding the amount of documentation that would have

to be collected and reviewed in order to respond to the request. Certainly, if there were

only a handful of accidents involving wheelchairs in the last ten years, the burden of

responding is significantly less than if there were thousands of such accidents. However,

it is not apparent from defendants' response that any effort was made to determine the

burden involved in answering the discovery request. In the absence of a showing of

undue burden, defendants' objection must be overruled in that regard.[1] See Deitz, 2015

WL 5031229, at *3 (overruling undue burden objection when defendant corporation

presented no evidence or information about the undue burden it claimed).

Nevertheless, the court finds the requested timeframe overly broad and fails to see

how any accident that occurred after Lyman's can be relevant to the issue of whether

Greyhound knew or should have known of the danger to Lyman. Accordingly, the court

limits the timeframe to a period of five years prior to the accident. See id. at *2

("[R]equesting information for a ten-year period is too long. If lack of training is indeed

a meritorious claim, then data covering a five-year period should be sufficient.");

Donovan, 2012 WL 3025877, at *2 (limiting the timeframe for the discovery request

from ten years to five years). The court also limits the geographical scope of the request

to the United States, as Lyman agreed to so limit her request during the hearing.

---

[1] Defendants make this same undue burden objection in response to all requests at issue in this motion and likewise fail to provide any support for those objections. As such, the court's analysis applies to each of defendants' undue burden objections, and the court overrules those objections summarily.

### B.  Production Request No. 11

Lyman's Request for Production No. 11 seeks the following documents:

Any and all documents related to training, job performance and work-related disciplinary actions for the Greyhound employees identified in Interrogatory 6.

ECF No. 17-1 at 6.  Interrogatory No. 6 asked defendants to "identify each and every person who was in any way involved with, or has knowledge of, the May 9, 2017 and May 10, 2017 incidents outlined in the [c]omplaint."  ECF No. 17-2 at 4.  Defendants' identified Roberts in their answer, meaning that, in Production Request No. 11, Lyman requests all documents related to Roberts' training, job performance, and work-related disciplinary actions.

During the hearing, counsel for defendants stated that defendants produced Roberts' entire personnel file with certain redactions for sensitive personal information and provided a log explaining each redaction.  Lyman indicated that she needs certain redacted information, including Roberts' address and date of birth, to identify and locate Roberts.  Defendants agreed to provide Roberts' address and date of birth, and the court accordingly grants the motion to compel in this respect.  The court is unconvinced that any other information was inappropriately redacted and thus otherwise denies the motion to compel for Production Request No. 11.

### C.  Production Request No. 12 and Interrogatory Request No. 11

Lyman's Request for Production No. 12 seeks the following:

All documents relating to claims or lawsuits against the Defendants concerning allegations of the Defendants' negligent interaction with passengers traveling in wheelchairs or concerning allegations of the Defendants' violation(s) of any provisions contained in Article[sic] III of the Americans with Disabilities Act.

8

ECF No. 17-1 at 6.

> Lyman's Interrogatory Request No. 11 seeks similar information, asking:
>
> In the past ten (10) years, has Greyhound Lines, Inc. been sued for allegedly violating Title III of the Americans with Disabilities Act ("ADA") and/or failing to implement its regulations and/or acting negligently toward any wheelchair bound passenger?  If yes, please give the Court, case number, names of the parties, names of counsel for the parties, causes of action and disposition of each lawsuit, including the amount of all verdicts and settlements.

ECF No. 17-2 at 5.

Defendants object, again arguing the requests are "overly broad, unduly burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence." ECF No. 19 at 8.  Specifically, defendants argue that any evidence of violation of the Americans with Disabilities Act ("ADA") is not relevant to Lyman's negligence claims. As defendants explain, Lyman cannot and does not state an ADA claim because there is no private cause of action for violation of the ADA.  Moreover, in South Carolina

> In order to show that [a] defendant owes h[er] a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that [s]he is a member of the class of persons the statute is intended to protect.

Norton v. Opening Break, 443 S.E.2d 406, 408 (S.C. Ct. App. 1994) (quoting Rayfield v. S.C. Dep't of Corrections, 374 S.E.2d 910, 914 (S.C. Ct. App. 1988)).  As such, defendants argue that the ADA does not provide any standard of care applicable to this case because the ADA was not designed to prevent the type of injury allegedly suffered by Lyman; it was designed to prevent discrimination.  Defendants also complain that this request has no time limitation, particularly given that "Greyhound was established over a hundred years ago."  ECF No. 19 at 13.

9

Lyman, conversely, argues that prior violations of the ADA are relevant to the issue of notice, standard of care, (non)compliance and punitive damages." ECF No. 17 at 11. Lyman maintains that the ADA is designed to protect against more than just discrimination. In particular, "49 C.F.R. Part 37 sets accessibility standards for common carriers that are designed to assist persons with disabilities and protect their safety during travel." ECF No. 23 at 8. Lyman also asserts that the ten-year time frame she requests is reasonable.

The court declines to compel defendants to produce documents or respond to interrogatories relating to violations of Title III of the Americans with Disabilities Act. As other courts have noted, "'the ADA is not a public safety statute for purposes of the negligence per se doctrine,' because the ADA is designed to prevent discrimination against individuals with disabilities, rather than to protect them from physical harm." M.R. by & Through N.R. v. Tajdar, 2018 WL 6050888, at *6 (D. Md. Nov. 19, 2018) (citing Hunter on behalf of A.H. v. District of Columbia, 64 F. Supp. 3d 158, 189 (D.D.C. 2014)). "[T]o allow a claim of negligence to proceed based on a violation of Title III of the ADA would effectively create a damages remedy for disability discrimination in public accommodations, even though Title III itself does not allow for monetary damages." Id. at *7 (D. Md. Nov. 19, 2018); see Smith v. Wal-Mart Stores, Inc., 167 F.3d 286, 293 (6th Cir. 1999) (noting the district court's reasoning to the same effect); Christian v. United States, 2013 WL 5913845, at *4 (N.D.W.V. Nov. 4, 2013).

As such, the court denies the motion to compel discovery with respect to prior violations of Title III of the ADA.[2]

The court agrees with Lyman that certain accessibility standards set forth in the implementing regulations may be relevant to question of negligence.  See Tajdar, 2018 WL 6050888, at *6 ("In contrast, the regulations contained in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), 28 C.F.R. pt. 36 (2018), which provide standards for the placement of handrails and other architectural features designed to assist persons with disabilities, relate to public safety and thus may be the basis of the standard of care in a negligence action.") (citing Smith, 167 F.3d at 286 (6th Cir. 1999); Bray v. Marriott Int'l, 158 F. Supp. 3d 441, 449 (D. Md. 2016)).  However, Lyman's Production Request No. 12 only asks for documents relating to violations of the provisions of Title III of the ADA; not for documents relating to violations of the implementing regulations.  Interrogatory Request No. 11 does ask whether Greyhound has been sued "for failing to implement [Title III of the ADA's] regulations."  ECF No. 17-2 at 5.  While counsel for Lyman stated in the hearing that Lyman limits this request to 49 C.F.R. Part 37 and Part 38, the court is unconvinced that these regulations, as limited, are relevant in their entirety.  For example, 49 C.F.R. 37.5 implements

---

[2] Counsel for Lyman, with defendants' consent, emailed the court additional exhibits on February 4, 2021 "to further demonstrate the relevancy between information concerning Greyhound[]'s violation(s) of the [ADA] and the issues presented in this case."  These documents include an incident report referring to Lyman as an "ADA passenger," documents reflecting Roberts' attendance and completion of mandatory ADA 2017 training, and other documents relating to Greyhound's training regarding customers with disabilities, including wheelchair lift operations and boarding policies.  These documents alter neither the court's analysis discussed supra, nor its conclusion that violations of Title III of the ADA are not relevant to this case.  However, as noted below, certain violations of implementing regulations involving accessibility may be relevant.

nondiscrimination regulations, which have no bearing on this matter. Lyman fails to point the court to specific sections in these regulations and provide meaningful argument on how any such section is relevant to the instant claims. The court will not parse through the regulations nor make Lyman's arguments for her. As the Fourth Circuit has explained, judges "are not like pigs, hunting for truffles buried in briefs. Similarly, it is not our job to [] make arguments for either party." Hensley on behalf of N. Carolina v. Price, 876 F.3d 573, 581 (4th Cir. 2017). As such, the court denies the motion to compel with respect to Production Request No. 12 and Interrogatory Request No. 11.

### D. Interrogatory Request No. 5

Lyman's Interrogatory No. 5 requests as follows:

> State in detail the actions, if any, undertaken by Greyhound Lines, Inc. in investigating and/or addressing the incidents outlined in the Complaint and identify each person involved and/or conducting such investigation.

ECF No. 17-2 at 4.

Defendants argue that this request requires defendants to reveal information protected by attorney-client privilege and the work product doctrine. Nevertheless, defendants maintain that they have responded completely to this request. Lyman argues that defendants' privilege objections should be overruled in the absence of a privilege log stating the specific nature of the privilege asserted, the nature and subject matter of the communication at issue, the sender and receiver of the communication, and their relationship to one another. ECF No. 17 at 15 (citing Curtis v. Time Warner Entm't Advance/Newhouse P'Ship, 2013 WL 2099496 (D.S.C. Oct. 1, 2013)). Defendants confirmed during the hearing that they have provided all information they have in

response to this request, mooting any arguments regarding privilege. As such, the court

denies the motion with respect to Interrogatory Request No. 5.

### E. Interrogatory Request No. 11

Lyman's Interrogatory No. 11 seeks responses to the following:

In the past ten (10) years, has Greyhound ever been cited or fined for the violation of any federal, state, or local regulation with regard to any alleged improper service to and/or handling of wheelchair-bound passengers? If so, please state the date of the citation(s) or fine(s); identify the person(s) issuing such citation(s) or fine(s); the reason(s) for the issuance of such citations(s) or fine(s); and the penalty(ies) assessed against Greyhound as a result of such citation(s) or fine(s).

ECF No. 17-2 at 5.

Defendants briefly argue that this request has "no relevance to the claims or

defenses asserted in this matter" and that the ten-year time frame is arbitrary and

inappropriate. ECF No. 19 at 16. Lyman generally argues that this request is relevant to

the issues of knowledge, notice, foreseeability, and standard of care.

Unlike Lyman's request regarding prior allegations of violation of the ADA, this

request is limited to only those violations of regulations involving "alleged improper

service to and/or handling of wheelchair-bound passengers," meaning that they seek

relevant evidence. ECF No. 17-2 at 5. Violations of regulations due to "improper

handling" of wheelchair-bound passengers are relevant to the issue of knowledge, notice,

and foreseeability. Again, these violations bear on whether Greyhound knew or should

have known of the danger to wheelchair passengers similar to the alleged danger Lyman

faced. This information is also relevant to standard of care because, if a regulation

prohibits improperly handling a wheelchair-bound passenger, such a regulation

presumably was designed to prevent injuries similar to Lyman's.

Still, the court finds the request overly broad because the same cannot be said of all regulation violations resulting from "alleged improper service to" wheelchair bound customers. As termed, this request encompasses violations of regulations that were not designed to prevent the injury Lyman suffered, such as anti-discrimination regulations. As explained above, prior violations of discrimination statutes or regulations are irrelevant to the present case. As such, the court only compels defendants to the answer Interrogatory Request No. 11 with respect to violations of any federal, state, or local regulation involving improper handling of wheelchair-bound passengers, which includes improper seating, securement, lifting, or pushing of such passengers and their wheelchairs. The court limits this request to a timeframe of five years prior to Lyman's alleged injuries.

Additionally, Lyman requests that the court grant her attorney's fees in connection with bringing the instant motion. Because Lyman has not presented any evidence that defendants have acted in bad faith in connection with the instant discovery dispute, the court denies the request. See Rogers v. Cherokee Creek Boys Sch., Inc., 2008 WL 4065696, at *2 (D.S.C. Aug. 26, 2008) ("[U]nder its inherent powers, the district court has authority to shift attorneys [sic] fees, but . . . only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so.").

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

14

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 24, 2021**
**Charleston, South Carolina**