IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| LISA LYMAN, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | No. 2:20-cv-01812-DCN |
|        vs. | ) | |
| | ) | **ORDER** |
| GREYHOUND LINES, INC., "JOHN DOE" | ) | |
| UNIDENTIFIED EMPLOYEES AND | ) | |
| AGENTS, | ) | |
| | ) | |
|        Defendants. | ) | |
| | ) | |

The following matter is before the court on plaintiff Lisa Lyman's ("Lyman") motion for leave to amend, ECF No. 42, and defendants Greyhound Lines, Inc. ("Greyhound") and "John Doe" unidentified employees and agents' (together, "defendants") motion for summary judgment, ECF No. 34. For the reasons set forth below, the court grants the motion to amend and finds as moot the motion for summary judgment.

## I. BACKGROUND

This case arises out of alleged injuries suffered by Lyman on May 9 and 10, 2017 while traveling from Charleston, South Carolina to Omaha, Nebraska on Greyhound's commercial passenger bus. Lyman suffers from cerebral palsy, and, as a result of her congenital disability, she has been wheelchair-dependent for the majority of her life.

Lyman's first alleged injury occurred on the Atlanta, Georgia to St. Louis, Missouri segment of her trip. According to Lyman, she was denied reserved priority seating by Greyhound employees when boarding and required to travel in her wheelchair. Greyhound employees positioned Lyman in an area of the bus designated for wheelchair

1

passengers but improperly secured her wheelchair to the bus floor. Twice during travel, she alleges, the straps used to secure her chair came loose. In the first instance, her travel companion caught the chair before any collision. In the second instance, the unsecured row of folding seats behind Lyman slammed into Lyman's wheelchair when the bus driver applied the brakes. The momentum of the folding seats pushed Lyman's wheelchair forward and pinned her against the row of seats in front of her for approximately two hours.

Lyman's second injury occurred in St. Louis, Missouri when a Greyhound employee, Willie Roberts ("Roberts"), attempted to re-board Lyman onto the bus via the bus's platform lift system. Lyman alleges that when the platform rose to the level of the bus floor, Roberts pushed the front wheels of Lyman's wheelchair in an attempt to roll the chair backwards onto the bus. However, instead of guiding Lyman onto the bus, the push caused the wheelchair to flip over backwards, which resulted in Lyman hitting her head on the bus floor.

On May 8, 2020, Lyman filed the instant action against defendants, alleging negligence, negligent hiring, and negligent training. ECF No. 1, Compl. On May 21, 2021, defendants filed a motion for summary judgment. ECF No. 34. On June 4, 2021, Lyman responded, ECF No. 40, and on June 11, 2021, defendants replied. ECF No. 48. On June 7, 2021, Lyman filed a motion to amend, ECF No. 42, to which defendants responded on June 21, 2021. ECF No. 54. Lyman did not file a reply to the motion to

amend, and the time to do so has now expired. As such, these motions are now ripe for the court's review.[1]

## II. STANDARD

### A. Motion to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend a pleading as a matter of course within 21 days after serving it; however, in all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Id. "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." Foster v. Wintergreen Real Estate, Co., 363 F. App'x 269, 276 (4th Cir. 2010). A "delay alone is not sufficient reason to deny leave to amend." Johnson v. Oroweat Foods Co., 785 F.2d 503, 505 (4th Cir. 1986).

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

---

[1] Lyman also filed two motions to compel, ECF Nos. 32 and 35, and defendants filed a motion for a protective order, ECF No. 45. The court addresses the motion to amend and motion for summary judgment first to determine the operative complaint and will resolve the discovery motions in the context of that complaint in a subsequent order.

issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

## III. DISCUSSION

The court first considers Lyman's motion to amend her complaint because an amended complaint renders motions directed at the original complaint moot. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."); see also Charleston Advancement Acad. High Sch. v. Acceleration Acads., LLC, 2020 WL 4016256, at *10 (D.S.C. July 16, 2020) ("In the Fourth Circuit, it is well established law that motions directed at superseded pleadings may be denied as moot."); McCoy v. City of Columbia, 2010 WL 3447476, at *1–2 (D.S.C. Aug. 31, 2010) (same). Upon consideration, the court grants the motion to amend and therefore finds as moot defendants' motion for summary judgment directed at the superseded complaint.[2]

Lyman moves to amend her complaint "to clarify ambiguities in the original

---

[2] Defendants argue that, even if the court grants Lyman's motion to amend, their motion for summary judgment "is not moot" because the proposed amended complaint "merely changes the language form of the [the complaint] and not the substance . . . ." ECF No. 48 at 2. Defendants are incorrect. Defendants' motion is moot because it is directed at a complaint that, pursuant to this order, has been superseded. That defendants still "take issue" with Lyman's amended complaint is inconsequential. Id. Still, the court finds that defendants' arguments in their motion for summary judgment are interrelated with and applicable to their argument that Lyman's proposed amendment is futile. Therefore, the court considers defendants' arguments in their motion for summary judgment to the extent they bear on issues in the instant motion to amend. See Waag v. Sotera Def Sols., Inc., 857 F.3d 179, 189 n. 4 (4th Cir. 2017) (finding that the district court was "well within its considerable discretion in denying [plaintiff's] motion to amend" where it concluded that summary judgment would be appropriate even with the proposed amendments); Steinburg v. Chesterfield County Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008) (holding that the district court did not abuse its discretion by denying a motion to amend where granting the motion "would be an act of futility because [plaintiff's] proposed amended complaint would not survive summary judgment").

pleading, conform the pleading with evidence revealed during discovery and with the Court's February 24, 2021 Order (ECF [No.] 29), and to narrow the issues to be presented at trial." ECF No. 42 at 1. Defendants argue that the court should deny Lyman leave to amend because her proposed amendments are futile. The court does not so find and therefore grants Lyman's motion to amend.

At the outset, the court notes that Lyman filed her motion to amend on June 7, 2021, beyond 21 days after service of her complaint but within the deadline for amending pleadings under the scheduling order, ECF No. 31. As such, Lyman may only amend her pleading with the court's leave, which the court should "freely give [] when justice so requires." Fed. R. Civ. P. 15(a). "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." U.S. ex rel. Wilson v. Kellogg Brown & Roof, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation omitted). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986); see Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.), cert. dismissed, 448 U.S. 911 (1980) ("Leave to amend should be denied on the ground of futility only when the proposed amendment is clearly insufficient because of substantive or procedural considerations.").

Defendants dispute Lyman's proposed amendments to the extent they allege a negligence per se theory based on violations of the implementing regulations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Defendants maintain that such amendments would be futile because ADA regulations are

"inapplicable and irrelevant" to the instant action. ECF No. 54 at 1. To determine whether Lyman's proposed amendments citing ADA regulations are futile, the court first proceeds with a general overview of Lyman's negligence per se theory, then addresses defendants' substantive arguments regarding that theory.

In her complaint, Lyman pleads four causes of action against defendants: (1) negligence in connection with her alleged injury from her wheelchair sliding forward into the row of seats in front of her; (2) negligence in connection with her alleged injury incurred while rolling her wheelchair from the platform lift system onto the bus; (3) negligent hiring and retention; and (4) negligent training and supervision. Under South Carolina law, any claim of negligence requires a plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the breach was an actual or proximate cause of the plaintiff's injury; and (4) the breach resulted in injury to the plaintiff. Madison v. Babcock Ctr., Inc., 638 S.E.2d 650, 656 (S.C. 2006). As one theory to satisfy the elements of duty and breach for each of her negligence-based claims, Lyman alleges in her original complaint that defendants violated Title III of the ADA and various ADA regulations. "In order to show that the defendant owes h[er] a duty of care arising from a statute [or regulation], the plaintiff must show two things: (1) that the essential purpose of the statute [or regulation] is to protect from the kind of harm the plaintiff has suffered; and (2) that [s]he is a member of the class of persons the statute [or regulation] is intended to protect." Doe v. Marion, 605 S.E.2d 556, 562 (S.C. Ct. App. 2004) (quoting Rayfield v. South Carolina Dep't of Corr., 374 S.E.2d 910, 914 (S.C. 1988)). If Lyman satisfies both prongs and shows that

defendants violated the statute or regulation at issue, then she satisfies both duty and breach or, in other words, establishes negligence per se. Rayfield, 374 S.E.2d at 915.

Defendants argue in their motion for partial summary judgment that Lyman cannot rely on violations of the ADA and its regulations to prove negligence per se because the purpose of the ADA and its regulations is to prevent discrimination—not physical injury to wheelchair-bound passengers. The court addressed the issue in part in its February 24, 2021 order, ECF No. 29, granting in part and denying in part Lyman's motion to compel, ECF No. 17 (the "February Order"). In its February Order, the court held that Lyman could not base a negligence per se theory on a violation of the ADA statute, explaining:

> "'[T]he ADA is not a public safety statute for purposes of the negligence per se doctrine,' because the ADA is designed to prevent discrimination against individuals with disabilities, rather than to protect them from physical harm." M.R. by & Through N.R. v. Tajdar, 2018 WL 6050888, at *6 (D. Md. Nov. 19, 2018) (citing Hunter on behalf of A.H. v. District of Columbia, 64 F. Supp. 3d 158, 189 (D.D.C. 2014)). "[T]o allow a claim of negligence to proceed based on a violation of Title III of the ADA would effectively create a damages remedy for disability discrimination in public accommodations, even though Title III itself does not allow for monetary damages." Id. at *7 (D. Md. Nov. 19, 2018); see Smith v. Wal-Mart Stores, Inc., 167 F.3d 286, 293 (6th Cir. 1999) (noting the district court's reasoning to the same effect); Christian v. United States, 2013 WL 5913845, at *4 (N.D.W.V. Nov. 4, 2013).

ECF No. 29 at 10. However, the court clarified "that certain accessibility standards set forth in the implementing regulations [of the ADA] may be relevant to question of negligence." Id. at 11 (citing Tajdar, 2018 WL 6050888, at *6 ("In contrast, the regulations contained in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), 28 C.F.R. pt. 36 (2018), which provide standards for the placement of handrails and other architectural features designed to assist persons with disabilities,

relate to public safety and thus may be the basis of the standard of care in a negligence action.")).

In response to defendants' motion for summary judgment and to better align her complaint with the February Order, Lyman requests leave to amend her complaint to, inter alia, remove allegations that defendants violated the ADA and add allegations that defendants violated specific subparts of the ADA regulations. For example, Lyman adds an allegation under her negligent training and supervision cause of action that Greyhound failed "to properly train its employees to ensure their proficiency in safe operation of buses and bus equipment, in violation of 49 C.F.R. §§ 37.173 and 37.209." ECF No. 42-1 at ¶ 39(H). Defendants argue that such amendments are futile "because if the statute itself cannot establish negligence per se then logic dictates neither can its accompanying regulations." ECF No. 48 at 3. As indicated in the February Order, the court disagrees.

Courts have found that certain ADA implementing regulations are "clearly designed to further the safety of people with disabilities." Bray v. Marriott Int'l, 158 F. Supp. 3d 441, 449 (D. Md. 2016); see Theatre Mgmt. Grp., Inc. v. Dalgliesh, 765 A.2d 986, 987–89 (D.C. 2001); Smith, 167 F.3d at 289–90. This court follows the lead of like-minded courts that "have recognized the viability of a negligence claim premised on a defendant's failure to comply with the certain 'Accessibility Guidelines' promulgated under the ADA (ADAAGs)." Est. of Saylor v. Regal Cinemas, Inc., 54 F. Supp. 3d 409, 430 (D. Md. 2014) (citing Smith, 167 F.3d at 286; Dalgliesh, 765 A.2d at 986). For example, in Smith, an elderly individual with a disability fell in a Wal–Mart restroom which was not equipped with safety features mandated under the ADAAGs, specifically, grab bars and bathroom stalls large enough to provide maneuvering space. 167 F.3d at

292–93.  While acknowledging that a private party may not recover damages under Title III of the ADA, the Sixth Circuit held that "whether Wal–Mart was in violation of the ADA by not installing grab bars in the toilet stall used by plaintiff, and thus was negligent per se, is a question for the jury."  Id. at 295.[3]  In Dalgliesh, a partially disabled person was injured when he fell while walking down a ramp in defendant's theater.  765 A.2d at 986.  The trial court allowed the plaintiff to introduce as evidence of negligence the fact that the slope of the ramp exceeded that permitted under the ADAAGs.  The District of Columbia Court of Appeals "sustain[ed] the trial judge's admission of the ADA standard as evidence of the care required in the circumstances."  Id. at 987.  Likewise, in Bray, the court held that a hotel's failure to comply with ADAAG standards for roll-in shower seats could support a negligence claim when the plaintiff was injured

---

[3] Defendants misleadingly assert that "the Georgia Court of Appeals later declined to follow the Sixth Circuit Smith opinion" in Val D'Aosta Co. v. Cross, 526 S.E.2d 580, 583 (Ga. 1999).  ECF No. 54 at 7, n. 2.  Notably, defendants do not acknowledge (via citation or otherwise) that this assertion and the quotation they reference to support it are derived from the dissenting opinion in Val D'Aosta Co..  Upon review, the court does not find Val D'Aosta Co. inconsistent with Smith, particularly with respect to the question of whether a violation of ADA regulations can be used as evidence of negligence per se.  See Val D'Aosta Co., 526 S.E.2d at 582 ("The facts and circumstances of this case create a factual issue as to the existence of negligence per se, because a jury must determine whether a violation of the statutes and regulations occurred and whether such violation constituted the proximate cause or a concurrent proximate cause of any injury and damages.").  The undersigned does not know how counsel for defendants' Westlaw or Lexis systems work in Greenville, but down here in the legal backwater of Charleston, our Westlaw highlights dissents in red print.  Maybe the federal government buys "Westlaw for Dummies."  The court is mindful that counsel for defendants entered an appearance in this matter on June 7, 2021, was substituted as counsel of record on June 14, 2021, and filed defendants' response shortly thereafter on June 21, 2021.  See ECF Nos. 47, 49.  The court will therefore give counsel the benefit of the doubt and attribute counsel's error to a rushed effort to file defendants' response within a short time after being retained.  Still, counsel for defendant may want to review Rule 11(b)(2) of the Federal Rules of Civil Procedure next time they file a brief.  As former Chief Judge Traxler is wont to say, "trust is hard to earn, easy to lose, and almost impossible to regain."

while trying to move from her wheelchair to a shower seat. 158 F. Supp. 3d at 449. The court finds these cases instructive, and based on their reasoning, the court is satisfied that violations of certain ADA regulations may support a negligence per se theory.

Lyman specifically relies on 49 C.F.R. §§ 37.173 and 37.209 to support her negligence per se allegations. Under 49 C.F.R. § 37.173, transportation service providers must "ensure that personnel are trained to proficiency . . . <u>so that they operate vehicles and equipment safely and properly assist</u> and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities." (emphasis added). 49 C.F.R. § 37.209 defines "training to proficiency" "to include, as appropriate to the duties of particular employees, training in proper operation and maintenance of accessibility features and equipment, boarding assistance, securement of mobility aids, sensitive and appropriate interaction with passengers with disabilities, handling and storage of mobility devices, and familiarity with the requirements of this subpart." On their face, these regulations have a public safety aim—namely to ensure that transportation providers properly assist individuals with disabilities with boarding and securing their mobility aids and further ensure that vehicles and accessibility equipment are operated "safely." A common sense reading of these regulations reveals that they were intended to prevent physical injuries of passengers with disabilities in connection with boarding assistance and the securing of mobility aids, such as wheelchairs—not merely to prevent discrimination against such individuals. The court therefore rejects defendants' arguments that that violations of these ADA regulations cannot form the basis of a negligence per se theory.

Defendants alternatively argue that the harms these regulations are designed to protect against are not the kind Lyman suffered. Specifically, defendants argue that Lyman's first alleged injury resulted from "unsecured, regular seats" impacting Lyman's wheelchair, and the relevant regulations only contemplate training with respect to securing the wheelchair itself, not these regular seats. Defendants further argue that Lyman's second alleged injury resulted from "improper pushing" of Lyman's wheelchair and the cited regulations "do not require training on how to push a wheelchair." ECF No. 54 at 6. The court is unpersuaded.[4]

First, defendants distort the plain language of Lyman's amended complaint, which unequivocally states that Lyman's "wheelchair [] became unsecured, forcing Plaintiff's wheelchair forward into the row of seats in front of her, injuring her legs, and pinning her there until the bus's next scheduled stop." ECF No 42-1 at ¶ 11. Lyman's allegations plainly indicate that her first injury resulted from improper securement of her wheelchair—a harm that the regulations precisely aim to prevent by requiring "training to proficiency" in the "securement of mobility aids." 49 C.F.R. § 37.209. Second, Lyman alleges that her second injury occurred as Greyhound's wheelchair lift attendant attempted to roll her wheelchair from the lift platform onto the bus and caused her

---

[4] The court could alternatively construe defendants' arguments as challenges to the third element of negligence, causation. In other words, defendants' may be asserting that even if Lyman could establish the elements of duty and breach based on violation of ADA regulations, she could not show that any such violation was a cause of her injuries. Ultimately, the difference is semantical, and the court reaches the same conclusion regardless of whether it analyzes the argument under the second prong of negligence per se or the third element of negligence. As alleged in her proposed amended complaint, Lyman's injuries occurred due to improper boarding assistance and mobility aid securement. Thus, Lyman sufficiently alleges in her proposed amended complaint that Greyhound's purported violation of regulations requiring training to proficiency in these areas caused her injuries.

wheelchair to flip over backwards. Lyman's second injury therefore clearly occurred as a result of improper "boarding assistance" and "handling . . . of mobility devices," areas in which the regulations require training to proficiency. Defendants' attempt to characterize this action as "improper pushing" outside the scope of the specifically enumerated categories of required training strains credulity. Therefore, Lyman's proposed amended complaint is not futile with respect to the first prong of negligence per se.

Defendants do not argue that Lyman's proposed amended complaint fails at the second prong of the negligence per se inquiry—that Lyman is a member of the class of persons the regulations are intended to protect. Rightfully so. Lyman alleges that she was a wheelchair-bound passenger who needed assistance with boarding and proper securement of her wheelchair to avoid injury. Accordingly, Lyman sufficiently alleges that she is a member of the class of persons the regulations are intended to protect. Therefore, under the facts pled by Lyman in her proposed amended complaint, a violation of 49 C.F.R. §§ 37.173 and 37.209[5] can be used to establish negligence per se, meaning that Lyman's proposed amendments regarding the same are not futile. Mindful that leave to amend should be freely given when justice so requires, the court grants the motion.

---

[5] The court recognizes that Lyman also alleges violations of "applicable subparts of Title 49, Part 37 of the United States Code of Federal Regulations" to support her first and second negligence causes of actions. ECF No. 42-1 at 5, 6. To be clear, not every violation of 49 C.F.R. § 37 may be evidence of negligence per se. As the court stated in its February Order, 49 C.F.R. § 37.5, for example, "implements nondiscrimination regulations, which have no bearing on this matter." ECF No. 29 at 11–12. The court therefore cautions Lyman to pursue her negligence per se theory only with respect to violations of those "applicable subparts" that are designed to protect individuals against physical harm, such as 49 C.F.R. §§ 37.173 and 37.209, and that arguably caused her injuries. Any discovery requests or negligence per se arguments directed at violations of 49 C.F.R. § 37 generally or subparts thereof that do not relate to public safety will be rejected by this court.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to amend and **FINDS AS MOOT** the motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 15, 2021
Charleston, South Carolina**