**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| LISA LYMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | )    No. 2:20-CV-01812-DCN |
| vs. | ) |
| | )    **ORDER** |
| GREYHOUND LINES, INC. and "JOHN | ) |
| DOE", *unidentified employees and agents*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

The following matter is before the court on defendants Greyhound Lines, Inc.

("Greyhound") and "John Doe" unidentified employees and agents' (collectively,

"defendants") motion for protective order, ECF No. 45, and motion to quash, ECF No.

63.  For the reasons set forth below, the court grants in part and denies in part the motion

for a protective order and denies the motion to quash.

## I.  BACKGROUND

This case arises out of alleged injuries suffered by plaintiff Lisa Lyman

("Lyman") on May 9 and 10, 2017 while traveling from Charleston, South Carolina to

Omaha, Nebraska on Greyhound's commercial passenger bus.  Lyman suffers from

cerebral palsy, and, as a result of her congenital disability, she has been wheelchair-

dependent for the majority of her life.

Lyman's first alleged injury occurred on the Atlanta, Georgia to St. Louis,

Missouri segment of her trip.  According to Lyman, she was denied reserved priority

seating by Greyhound employees when boarding and required to travel in her wheelchair.

Greyhound employees positioned Lyman in an area of the bus designated for wheelchair

1

passengers but improperly secured her wheelchair to the bus floor. Twice during travel, she alleges, the straps used to secure her chair came loose. In the first instance, her travel companion caught the chair before any collision. In the second instance, the unsecured row of folding seats behind Lyman slammed into Lyman's wheelchair when the bus driver applied the brakes. The momentum of the folding seats pushed Lyman's wheelchair forward and pinned her against the row of seats in front of her for approximately two hours.

Lyman's second injury occurred in St. Louis, Missouri when a Greyhound employee, Willie Roberts ("Roberts"), attempted to re-board Lyman onto the bus via the bus's platform lift system. Lyman alleges that when the platform rose to the level of the bus floor, Roberts pushed the front wheels of Lyman's wheelchair in an attempt to roll the chair backwards onto the bus. However, instead of guiding Lyman onto the bus, the push caused the wheelchair to flip over backwards, which resulted in Lyman hitting her head on the bus floor.

On May 8, 2020, Lyman filed the instant action against defendants, alleging negligence, negligent hiring, and negligent training. ECF No. 1, Compl. On May 21, 2021, Lyman issued to the United States Department of Justice ("DOJ") a subpoena to produce documents pursuant to Federal Rule of Civil Procedure 45. See ECF No. 45-1. The DOJ obtained the requested documents from Greyhound in connection with an investigation into its compliance with the Americans with Disabilities Act ("ADA"). On June 10, 2021, defendants filed a motion for a protective order with respect to that subpoena. On June 24, 2021, Lyman responded, and on July 1, 2021, defendants replied, ECF No. 59. On July 13, 2021, defendants also filed a motion to quash the subpoena.

ECF No. 63.  On July 27, 2021, Lyman responded, ECF No. 72, and on August 12, 2021, defendants replied, ECF No. 76.  The court held a hearing on the motions on August 16, 2021.  ECF No. 77.  As such, the motions have been fully briefed and are now ripe for the court's review.

## II.   DISCUSSION

To challenge Lyman's subpoena to the DOJ, defendants filed both a motion for a protective order and a motion to quash.  The court first addresses Lyman's argument that defendants filed both motions as a dilatory tactic and her corresponding request to sanction that conduct.  The court then addresses defendants' standing to bring each motion.  Finding that defendants only have standing with respect to the motion for a protective order, the court considers the merits of only that motion and denies the motion to quash.

### A.   Request for Sanctions

At the outset, the court discusses Lyman's request for sanctions pursuant to Local Civ. Rule 7.09 (D.S.C.) on the grounds that defendants filed their motion for a protective order and motion to quash separately as a dilatory tactic to extend litigation.  Rule 7.09 provides, "Where the court finds that a motion is frivolous or filed for delay, sanctions may be imposed against the party or counsel filing such motion."  Local Civ. Rule 7.09 (D.S.C.).  The court agrees with Lyman that defendants could have brought both motions together to more efficiently discuss all their objections to the subpoena in one filing.  Defendants' motion to quash includes many of the same challenges to the subpoena that they already raised in their earlier-filed motion for a protective order, including that the requested documents are confidential and irrelevant.  The motion to quash is simply a

more comprehensive attack that includes more thorough arguments and additional objections to subpoena requests.[1]  In this respect, it appears that defendants filed their motion to quash as an attempt to get a second bite at the apple.

Defendants' counsel admit to the overlap in their motions, explaining that "the basis for Defendants' Motion to Quash is based upon the same arguments and analysis as its Motion for a Protective Order."  ECF No. 59 at 2.  It appears that defendants' filing of both motions separately was a tactical strategy, although not necessarily for dilatory purposes.  Defendants explain that "[d]efense Counsel had an extremely limited timeframe to respond to the subpoena" because the DOJ's response to the subpoena was due on June 11, 2021, and that same day, defendants filed their motion to substitute counsel, ECF No. 63 at 2.  In other words, defendants' new counsel filed the motion for a protective order almost immediately after appointed.  Counsel seems to have filed the motion to quash thereafter to address any deficiencies in its rushed motion for a protective order.  Thus, while counsel's duplicative filings confuse defendants' challenge to the subpoena and create inefficiencies for both the court and the parties, the motions were not frivolous or filed for delay and thus do not warrant sanctions under Rule 7.09.

**B.  Standing**

Before addressing the merits of defendants' motions, the court must first determine whether defendants have standing to bring a motion to quash or for a protective order.  "A motion to quash should be made by the person or entity from whom or from which the documents or things are requested."  Green v. Sauder Mouldings, Inc.,

---

[1] Defendants' motion to quash also addresses many of the arguments Lyman raised in her response to the motion for a protective order.  Defendants should have included such discussion in a reply to its motion for a protective order, not a new motion.

4

223 F.R.D. 304, 306 (E.D. Va. 2004).  Generally, a party to litigation has no standing to

move to quash a third-party subpoena duces tecum unless the movant claims some

personal right or privilege to the documents sought.  Id.  (citing Langford v. Chrysler

Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1974); Brown v. Braddick, 595 F.2d 961,

967 (5th Cir. 1979); 9A Wright & Miller, Federal Practice and Procedure, Civ.2d 2459

(1995)).  District courts have found a "personal right" in subpoenaed materials in only

limited circumstances.  See In re Grand Jury Subpoena: John Doe, No. 05GJ1318, 584

F.3d 175, 184 n. 14 (4th Cir. 2009) (noting that a congressman lacked standing to seek

to quash a subpoena seeking his congressional office's records from his Chief of Staff

when the congressman had no valid claim of privilege over those documents); United

States v. Idema, 118 Fed. Appx. 740, 744 (4th Cir. 2005) (finding no personal right in a

defendant's financial information related to criminal restitution); Corsair Special

Situations Fund, L.P. v. Engineered Framing Sys., Inc., 2011 WL 3651821, at *2–4 (D.

Md. Aug. 17, 2011) (finding no personal right in telephone bills, invoices, and

records); Robertson v. Cartinhour, 2010 WL 716221, at *1–2 (D. Md. Feb. 23, 2010)

(finding no personal right in bank records held by financial institutions).  "Examples of

such personal rights or privileges include the personal privacy right and privilege with

respect to the information contained in [ ] psychiatric and mental health records, claims

of attorney-client  privilege, and other privacy interests, including those relating to salary

information and personnel records."  Hughes v. Twenty-First Century Fox, Inc., 327

F.R.D. 55 (S.D.N.Y. 2018) (internal citation omitted).  "Privilege" refers to the

"protections afforded by the rules of evidence."  See United States v. Reynolds, 345 U.S.

1 (1953); Southern Ry. Co. v. Lanham, 403 F.2d 119, 134 n. 15 (5th Cir.1968) (noting

that privileges referred to in the discovery rules correspond to those in the rules of evidence).

The parties do not cite, and this court could not locate, any authority recognizing a blanket personal right or privilege in documents provided to a government agency during the course of an investigation. The court is not satisfied that any such personal right or privilege exists. See Rondini v. Bunn, 2019 WL 2409134, at *3 (N.D. Ala. June 7, 2019) ("While the court recognizes Defendant's desire to keep such information private, he has not provided any authority indicating that he has standing to quash the non-party subpoenas directed at the law enforcement agencies . . . ."). Defendants argue that they have a personal right in the subpoenaed documents because the DOJ's policy manual provides that its investigations are confidential. In particular, defendants rely on the policy manual's provision that

> DOJ personnel should presume that non-public, sensitive information obtained in connection with work is protected from disclosure, except as needed to fulfill official duties of DOJ personnel, and as allowed by court order, statutory or regulatory prescription, or case law and rules governing criminal and civil discovery.

ECF No. 63 at 4. This statement does not provide defendants a personal right or privilege in the documents. The DOJ's confidentiality policy is intended to prevent the unauthorized disclosure of DOJ information by DOJ employees, not to prohibit the DOJ's response to a lawful subpoena. Indeed, the policy explicitly contemplates disclosure of its investigatory documents during "civil discovery." Id. Therefore, defendants must show that they have a personal right in the documents apart from the fact they were provided to the DOJ during an investigation.

Defendants alternatively argue that they have a personal right to challenge the subpoena because it seeks defendants' "confidential business information." Id. at 5. The court agrees that defendants have a personal right in their confidential commercial information. See In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig., 2014 WL 1329944, at *1 (S.D. W.Va. Mar. 31, 2014) ("MedStar plainly has a personal right or privilege in its confidential business information."). However, defendants have not made any factual showing that the documents requested in the subpoena constitute confidential commercial information. "Confidential commercial information has been defined as important proprietary information that provides the business entity with financial or competitive advantage when it is kept secret and results in competitive harm when it is released to the public." Rech v. Wal-Mart Stores East, L.P., 2020 WL 3396723, at *2 (D.S.C. July 19, 2020) (quoting United Prop. & Cas. Ins. v. Couture, 2020 WL 2319086, at *7 (D.S.C. May 11, 2020)). Defendants do not explain how any of the requested documents satisfy this definition. The court is aware of no authority recognizing a personal right in one's business records generally, meaning that defendants' standing to quash the subpoena turns on their showing of confidentiality. Wilemon Found., Inc. v. Wilemon, 2021 WL 1649507, at *4 (N.D. Miss. Apr. 27, 2021) ("The plaintiffs—both corporate entities—have failed to identify any personal right or privilege with respect to their own business records and thus their motion to quash should have been denied."). Because defendants have failed to make such a showing, and thereby identify a cognizable personal right in the documents sought in the subpoena, the court finds that

defendants lack standing to bring a motion to quash.[2]  Therefore, the motion to quash is

denied.

Defendants do, on the other hand, satisfy the standing requirements to seek a

protective order.  When a party files a motion for a protective order, Rule 26 standing

requirements apply, "regardless of whether [they have] standing to bring a motion to

quash under Rule 45."  Singletary, 289 F.R.D. at 240 n. 2.  Under Rule 26(c),

> a party may move for a protective order to protect itself from "annoyance,
> embarrassment, oppression, or undue burden or expense," regardless of
> whether the moving party is seeking to prevent disclosure of information by

---

[2] The court acknowledges that where a party files a motion to quash and, in that motion, alternatively moves for a protective order, some courts find that the party has standing to challenge the subpoena as overbroad and irrelevant under Rule 26, "regardless of whether they have standing to bring a motion to quash under Rule 45." Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 240 (E.D. Va. 2012); see Wash. v. Thurgood Marshall Acad., 230 F.R.D. 18, 22 (D.D.C. 2005) (declining to consider standing for quashing subpoenas for employment records where a party alternatively moved for a protective order and analyzing the party's challenge to the subpoenas under Rule 26 standards).  Likewise, when a party files only a motion to quash, some courts will construe it as a motion for a protective order when it challenges the relevancy of documents sought by a subpoena.  See Sirpal v. Wang, 2012 WL 2880565, at *4 n. 12 (D. Md. July 12, 2012) (construing plaintiffs motion to quash as one for a protective order under Rule 26 and using relevance and overbreadth to quash the subpoena at issue); Auto–Owners Ins. Co., 231 F.R.D. at 429 (finding that a party did not have standing to move to quash a subpoena for financial records, but holding that the party nonetheless had standing to challenge the relevancy of documents sought by the subpoena and deeming the motion to quash a motion for a protective order).  Neither approach makes sense in this case.

Here, defendants did not bring a motion to quash that requested a protective order in the alternative.  Nor did defendants bring a motion to quash that the court could construe as a motion for a protective order.  Instead, defendants filed both a motion for a protective order and a motion to quash as two separate, independent motions.  If the court were to construe defendants' motion to quash as a motion for a protective order, it would deny the same as duplicative of defendants' first motion for a protective order. Moreover, if the court were to simply employ the standards of a motion for a protective order to determine standing and assess the merits of defendants' motion to quash, it would have the same practical effect as considering two motions for a protective order. Therefore, the standing requirements for a motion to quash apply with full force to defendants' motion.

a nonparty, as long as the moving party can tie the protected information to
an interest listed in the rule . . . .

Firetrace USA, LLC v. Jesclard, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008) (citing

Fed. R. Civ. P. 26(c)).

Defendants argue that they have standing to seek a protective order because the

subpoena is "oppressive" to them. ECF No. 45 at 4. Effectively, defendants argue that

the subpoena is oppressive because Lyman uses it to obtain information that the court

previously found outside the scope of discovery. The court agrees that this concern is

sufficient to establish standing. See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.,

231 F.R.D. 426, 429 (M.D. Fla. 2005) ("As parties, Defendants clearly have standing to

move for a protective order if the subpoenas seek irrelevant information."). Therefore,

the court may consider the motion for a protective order.[3] The court first addresses the

standard for issuance of a protective order and then addresses the merits of defendants'

arguments thereunder.

### C.  Protective Order Standard

"The scope of discovery for a nonparty litigant under a subpoena duces tecum

issued pursuant to Rule 45 is the same as the scope of a discovery request made upon a

party to the action under Rule 26." Alston v. DIRECTV, Inc., 2017 WL 1665418, at *2

(D.S.C. May 3, 2017). In other words, the scope of discovery allowed under

a Rule 45 subpoena is equivalent to the scope of discovery allowed under Rule

26. HDSherer LLC v. Nat'l Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C.

---

[3] Because the court denies defendants' motion to quash for lack of standing, the
court will not consider any arguments therein, even to the extent they bear on the motion
for a protective order. Defendants are not entitled to supplement one motion via the
filing of another motion, particularly one for which they have no standing to bring.

2013).  Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense."  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" by forbidding or limiting the scope of discovery.  Fed. R. Civ. P. 26(c)(1).  "The standard for issuance of a protective order is high."  Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, 2017 WL 3620061 (D.S.C. Aug. 23, 2017) (quoting Nix v. Holbrook, 2015 WL 631155, at *2 (D.S.C. Feb. 13, 2015)).  "The party moving for a protective order bears the burden of establishing good cause."  Slager v. Southern States Police Benevolent Association, Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016) (quoting Webb v. Green Tree Servicing, LLC, 283 F.R.D. 276, 278 (D. Md. 2012)).  "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production."  Id. (quoting UAI Tech., Inc. v. Valutech, Inc., 122 F.R.D. 188, 191 (M.D.N.C. 1988)).  In other words, the court "must weigh the need for the information versus the harm in producing it."  Id. (quoting A Helping Hand, LLC v. Baltimore Cty., Md., 295 F. Supp. 2d 585, 592 (D. Md. 2003)).  The district court is afforded broad discretion "to decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

### D.  Confidentiality

Defendants first argue that the subpoenaed information is confidential and protected from disclosure on four grounds: (1) the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"); (2) the Family Educational Rights and Privacy Act ("FERPA"), 20

U.S.C. § 1232g; (3) the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and (4) Federal Rule of Civil Procedure 45(d)(3)(B)(i).  Despite defendants' bare citation to the Privacy Act and FERPA, defendants fail to explain how these statutes protect the requested information from disclosure.  Therefore, the court does not find good cause to modify or quash the subpoena on the basis of these two statutes.  Additionally, defendants' reliance on FOIA is misplaced.  These protections govern FOIA requests, not subpoenas.  See United States ex rel. Willis v. SouthernCare, Inc., 2015 WL 5604367, at *5 (S.D. Ga. Sept. 23, 2015) ("[F]or subpoenas the presence of confidential commercial information counsels caution and concern for the disclosing party's business interests, but it does not compel quashing as in FOIA.").  Therefore, the court will not issue a protective order solely because defendants allege that they satisfy the standard of confidentiality set forth in FOIA—that the documents are "customarily and actually treated as private" by defendants.[4]  See ECF No. 45 at 6 (citing Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356 (2019)).  Accordingly, only one of defendants' confidentiality arguments remains: Federal Rule of Civil Procedure 45(d)(3)(B)(i).  Rule 45(d)(3)(B)(i) provides as follows:

> If a subpoena requires disclosure of a trade secret or other confidential research, development or commercial information, . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

---

[4] In any event, defendants provide no factual support for its bare assertion that it "customarily and actually" treats the documents identified in the subpoena as private.

11

Fed. R. Civ. 45(d)(3)(B)(i) (emphasis added).   As the court has explained, "[c]onfidential

commercial information has been defined as important proprietary information that

provides the business entity with financial or competitive advantage when it is kept secret

and results in competitive harm when it is released to the public." Rech, 2020 WL

3396723, at *2 (internal citation omitted).   To establish good cause for a protective order

in the context of confidential business documents, the moving party—here defendants—

must show that disclosure of its commercial information will give rise to an "identifiable

harm." Minter v. Wells Fargo Bank, N.A., 2010 WL 5418910, at *8 (quoting Deford v.

Schmid Prod. Co., a Div. of Schmid Lab'ys, 120 F.R.D. 648, 652–53 (D. Md.

1987)); see In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y.

2006) (noting that good cause exists "when a party shows that disclosure will result in a

clearly defined, specific and serious injury.") (quoting Shingara v. Skiles, 420 F.3d 301,

306 (3d Cir. 2005)).   The party "may not rely upon 'stereotyped and conclusory

statements,' but "must present a 'particular and specific demonstration of fact' as to why

a protective order should issue." Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 202 (D.

Md. 2006) (quoting 8A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2035 (2d ed.

1994)).   "Broad allegations of harm, unsubstantiated by specific examples or articulated

reasoning, do not support a good cause showing." Id. (quoting Merit Industries, Inc. v.

Feuer, 201 F.R.D. 382, 384–385 (E.D. Pa. 2001)).   "Where the party seeking protection

under Rule 26 is a business, 'it must show that disclosure would cause significant harm to

its competitive and financial position.'" Waterkeeper Alliance v. Alan & Kristin Hudson

Farm, 278 F.R.D. 136, 140 (D. Md. 2011) (quoting Minogue v. Modell, 2011 WL

1308553, at *4 (D. Md. Mar. 30, 2011)).   This showing must be made through "specific

demonstrations of fact, supported where possible by affidavits and concrete examples rather than broad, conclusory allegations of potential harm." Deford, 120 F.R.D. at 653; see also Andrew Corp. v. Rossi, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (holding that a sufficient specificity standard requires a likely and significant injury); Waelde v. Merck, Sharp & Dohme, 94 F.R.D. 27, 28 (E.D. Mich. 1981) (holding that harm must be clearly defined, rather than speculative competitive damage).

Defendants are not entitled to a protective order under Rule 45(d)(3)(B)(i). As the court already stated, defendants do not identify any specific documents they claim are confidential commercial information. To the extent defendants intend to claim that all documents requested in the subpoena are entitled to this protection, defendants have not shown how any, much less all, of the documents fit within the definition of confidential commercial information. For example, "Correspondence between the United States and Greyhound's ADA Compliance Manager" certainly does not constitute "important proprietary information" that provides defendants a "financial or competitive advantage when it is kept secret." See Rech, 2020 WL 3396723, at *2. During the hearing, defendants conceded this point. Defendants likewise failed to show any identifiable harm that would result from disclosing any of the requested documents to Lyman. Notably, Lyman is a former Greyhound customer and not a competitor, so disclosure of any confidential information to her solely for use in this litigation should not result in commercial harm to Greyhound. See Insulate Am. v. Masco Corp., 227 F.R.D. 427, 433 (W.D.N.C. 2005) ("Courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor.") (citing Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D. 288 (D. Del. 1985)). Additionally, the subpoenaed party, the DOJ,

is not a customer of Greyhound, meaning that permitting disclosure would not negatively impact an existing customer relationship of defendants'. See HDSherer, 292 F.R.D. at 309 (granting motion to quash where subpoenas were issued to eighteen of the defendant's customers, thereby causing harm to the defendant's customer relationships). Therefore, the documents identified in the subpoena are not entitled to blanket protection as confidential commercial information, and defendants failed to make the requisite showing for the court to order such protection for any particular documents. In other words, defendants have failed to show good cause for a protective order under Rule 45(d)(3)(B)(i).[5]

### E. Scope

Otherwise, defendants challenge the subpoena as an improper "attempt to circumvent" the court's February 24, 2021 discovery order, ECF No. 29, which granted in part and denied in part Lyman's December 4, 2020 motion to compel, ECF No. 17 (the "February Order"). ECF No. 45 at 4. The court addresses the merits of this argument with respect to each challenged subpoena request, including 1, 2, 3, 4, 6, 10, 11, 12(d), and 12(f). For ease of discussion, the court discusses related requests together.

#### 1. Subpoena Request Nos. 1, 2, and 4

Defendants object to Lyman's Subpoena Request Nos. 1, 2, and 4, which request Greyhound's training materials.[6] Defendants complain that these requests mirror

---

[5] Because the court finds that the subpoena does not request confidential commercial information, the court need not assess whether Lyman would still be entitled to the subpoenaed documents due to "substantial need" if it had.

[6] Subpoena Request No. 1 seeks "Greyhound's 'Technical Traning' curriculum . . . limited to training requirements relating to the proper, safe and effective operation of wheelchair lifts and wheelchair securement devices." ECF No. 45-1 at 2. Subpoena Request No. 2 seeks "Greyhound's ADA Training and Technical Training curriculum

Lyman's previous production request directed at defendants, which sought "documents related to training, job performance and work-related disciplinary actions for Greyhound employees," including Roberts, the employee who allegedly was involved in her second injury.  ECF No. 17-1 at 11.  In a hearing held on February 9, 2021 on the motion to compel defendants' response to that request, defendants confirmed that they produced the entire personnel file for Roberts, with the exception of certain redactions of Roberts' personal information.  See ECF No. 28.  In its February Order, the court noted that the parties came to an agreement regarding Lyman's need for some of Roberts' redacted personal information and declined to further compel defendants to produce unredacted versions of Roberts' personnel file.  ECF No. 29 at 8.  Defendants argue that Subpoena Request Nos. 1, 2, and 4 are improper attempts to circumvent that order.

The court does not find that Lyman is improperly using the subpoena to obtain defendants' unredacted materials.  Notably, the subpoena does not request Roberts' personnel files at all—it requests only Greyhound's training materials, including those received by Roberts.  While the court is aware that defendants redacted Roberts' personal information from his personnel file, the court has no information regarding redactions that defendants made with respect to training materials.  Therefore, the court fails to see how the request constitutes an improper attempt to receive unredacted versions of Greyhound's documents.  Moreover, to the extent defendants argue that the court should issue a protective order simply because the documents requested have been previously produced by defendants, the court disagrees.  "[T]he possibility of duplication is not a

_____

from May 9, 2012 through February 16, 2019."  Id.  Subpoena Request No. 4 seeks "ADA Training and Technical Training received by Greyhound St. Louis, Mo. Employee Willie Roberts during the operation of the Decree."  Id.

reason for quashing [or modifying] the subpoena," and Lyman "should not be limited to production of documents only by [defendants]." In re C.R. Bard, Inc. v. Pelvic Repair Sys. Prod. Liab. Litig., 287 F.R.D. 377, 383 (S.D. W.Va. 2012).[7]

Defendants further complain that Subpoena Request Nos. 2 and 4 improperly seek Greyhound's "ADA training." See ECF No. 45-1 at 2. In at least two orders, the court has made clear that Greyhound's compliance with ADA statutory provisions is not relevant to this action. See ECF Nos. 29 and 65. The court explained that violations of specific ADA regulations related to the public safety of wheelchair passengers may be relevant, but emphasized that only those discovery requests narrowly tailored to those specific, relevant ADA regulations would be permitted. ECF No. 65 at 8–13. Lyman argues that the training materials defendants have produced so far do "not differentiate between training on discrimination (Title III of the ADA) and training on safety/accessibility (49 C.F.R. Parts 37 and 38)." ECF No. 53 at 6. Because the topics "are so intertwined," Lyman framed her requests to include both "ADA Training" and "Technical Training." Id. This argument directly contradicts the court's previous orders. Regardless of whether the topics are "intertwined," Lyman must frame her discovery requests in accordance with the limitations set forth by this court. The court has repeatedly ordered that Lyman cannot rely on the applicability of a select few ADA regulations to justify carte blanche discovery into Greyhound's compliance with the

---

[7] Similarly, while counsel for defendants argued in the hearing held on August 16, 2021 that this and other requests in the subpoena are disproportionate to the amount in controversy in this matter, the court is not so convinced. On their face, the requests appear reasonable to the court. The court has no information regarding the amount of responsive material the DOJ possesses nor the amount of time required to produce such materials. In any event, such an argument concerning the burden to the DOJ in responding to the subpoena should be brought by the DOJ, not defendants.

ADA.  In its order granting Lyman leave to amend her complaint, the court specifically "caution[ed] Lyman to pursue her negligence per se theory only with respect to violations of those 'applicable subparts' that are designed to protect individuals against physical harm, such as 49 C.F.R. §§ 37.173 and 37.209, and that arguably caused her injuries." ECF No. 65 at 13 n. 5.  The court further warned that, "Any discovery requests or negligence per se arguments directed at violations of 49 C.F.R. § 37 generally or subparts thereof that do not relate to public safety will be rejected by this court." Id.  Because this discovery request does not comply with the court's explicit instructions, the court modifies the subpoena to remove any request for "ADA Training."  Further, the court limits all requests for "Technical Training" to only that training related to wheelchair lifts and wheelchair securement devices.[8]  Also, the court limits the timeframe to five years prior to Lyman's injuries to align with the timeframe permitted in the court's prior discovery orders.

### 2.  Subpoena Request No. 6

Defendants dispute Lyman's Subpoena Request No. 6, which requests records pertaining to "injuries sustained by Greyhound's wheelchair-bound/reliant passengers" for the timeframe "May 9, 2012 through February 16, 2019," which spans a seven-year timeframe.  ECF No. 45-1 at 2.  Lyman previously moved to compel defendants' production of documents relating to accidents involving a wheelchair.  See ECF No. 17. In its February Order, the court granted Lyman's motion to compel a response to that request, but explained that it "fails to see how any accident that occurred after Lyman's

---

[8] Oddly, Lyman limits Subpoena Request No. 1 in that manner, but does not so limit Request Nos. 2 and 4.

can be relevant to the issue of whether Greyhound knew or should have known of the danger to Lyman." ECF No. 29 at 7. Therefore, the court limited the timeframe for Lyman's request to five years prior to Lyman's injuries. Lyman's request in the subpoena exceeds that timeframe by two years after Lyman's injuries. Lyman argues that

> [d]ocuments generated after the date of [Lyman]'s injuries, May 10, 2017, are necessary to demonstrate Greyhound's disregard for their obligations under the Consent Decree which, if followed, could have prevented [Lyman]'s injuries as well as numerous others. These documents are relevant and necessary to [Lyman]'s presentation of punitive damages.

ECF No. 53 at 4. The court agrees with defendants that Lyman is attempting a second bite at the apple with this argument. The court has already ordered that Lyman is not entitled to documents relating to injuries that occurred after Lyman's because these incidents have no bearing on whether defendants knew or should have known of the danger to Lyman. The consent decree entered between the DOJ and Greyhound in connection with the DOJ's investigation (the "Consent Decree") does not alter that conclusion. The court therefore imposes the same timeframe limitation set forth in its February Order and orders Lyman to so limit any similar requests in the future.

### 3. Subpoena Request Nos. 10 and 12(d)

Defendants list Subpoena Request Nos. 10 and 12(d) in its list of challenged requests, but provide no specific argument regarding why these requests should be modified or quashed. Defendants appear to suggest that the requests improperly relate to the ADA. See ECF No. 45 at 2 (noting that this request "pertains to ADA documents"). Subpoena Request No. 10 seeks

> A roster of wheelchair-bound/reliant individuals injured in connection with improper wheelchair handling, lifting, pushing, seating, loading, or securement, and compensated under the Decree (with redactions if required)

18

> including the amount of compensation received, description of injury, and cause of injury during the operation of the Decree.

ECF No. 45-1 at 2. Subpoena Request No. 12(d) similarly seeks documents relating to

> [b]reach(es)/violation(s) by Greyhound of the Decree (including breach(es)/violation(s) of any local, state, or federal regulation or statute or common law), and the United States' response(s) to said breach(es)/violation(s)

but only as long as such documents involve

> [a]ccidents which resulted in injury to wheelchair-bound/reliant passengers in connection with improper wheelchair handling, lifting, pushing, seating, loading, or securement from May 9, 2012 through February 16, 2019[.]

Id. These requests are consistent with the court's prior discovery order. See ECF No. 29 at 14 ("[T]he court only compels defendants to the answer Interrogatory Request No. 11 with respect to violations of any federal, state, or local regulation involving improper handling of wheelchair-bound passengers, which includes improper seating, securement, lifting, or pushing of such passengers and their wheelchairs."). Without any further argument from defendants on the matter, the court overrules the objections.

#### 4. Subpoena Request Nos. 3 and 12(f)

Subpoena Request Nos. 3 and 12(f) both relate to Greyhound's "ADA Compliance Manager," who Greyhound was required to hire with DOJ approval pursuant to paragraph 15 of the Consent Decree. Subpoena Request No. 3 seeks documents related to the hiring and approval of Greyhound's ADA Compliance Manager. Subpoena Request No. 12(f) seeks "Correspondence between the United States and Greyhound's ADA Compliance Manager" relating to

> [a]ccidents which resulted in injury to wheelchair-bound/reliant passengers
> in connection with improper wheelchair handling, lifting, pushing, seating,
> loading, or securement from May 9, 2012 through February 16, 2019[.]

Id. at 3. Lyman explains that the Consent Decree required Greyhound's ADA

Compliance Manager to "undertake a complete overhaul of its accessibility/safety

standards and employee training" by June 9, 2016. ECF No. 53 at 9. Lyman argues that

Greyhound's ADA Compliance Manager "has knowledge of the company's efforts to

institute safety and training policies, and the policies' shortcomings," such that the ADA

Compliance Manager's qualifications and background are relevant. Because the ADA

Compliance Manager likely played a role in training the employees allegedly involved in

Lyman's injuries and implementing Greyhound's safety policies for wheelchair-bound

passengers, the court finds this discovery request relevant and declines to issue a

protective order for the same.

### 5. Subpoena Request No. 11.

Subpoena Request No. 11 seeks documents pertaining to "Greyhound's retention

of an independent Administrator and his/her implementation of the Claims Procedure

pursuant to the Decree." ECF No. 45-1 at 2. According to Lyman, the Consent Decree

required Greyhound to retain an independent claims administrator to handle

compensation for individuals who assert ADA claims meeting criteria established by

Greyhound and the DOJ. Lyman argues that these documents "will likely show that

individuals who were physically injured as a result of Defendants' conduct received

greater compensation than those who were subjected to other forms of discrimination."

ECF No. 53 at 10. Lyman argues that "Greyhound's acknowledgement that physical

injured to [sic] disabled passengers are entitled to greater compensation than those not

physically injured is relevant to the issues of notice and knowledge for the purpose of Plaintiff's negligence claims, as well as injury severity." Id. The connection of these materials to the instant case is tenuous at best. Therefore, the court finds this request not relevant and modifies the subpoena to exclude it.

### III.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** the motion for a protective order and **DENIES** the motion to quash.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 26, 2021**
**Charleston, South Carolina**

21