**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| LISA LYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-CV-01812-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| GREYHOUND LINES, INC. and "JOHN | ) | |
| DOE," *unidentified employees and agents*, | ) | |
| | ) | |
| Defendants. | ) | |
| ‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗ | ) | |

The following matter is before the court on plaintiff Lisa Lyman's ("Lyman")

fourth and fifth motions to compel, ECF Nos. 91 and 97, respectively. For the reasons

set forth below, the court grants the fourth motion to compel, grants in part and denies in

part the fifth motion to compel, and awards Lyman expenses.

## I.  BACKGROUND

This case arises out of alleged injuries suffered by Lyman on May 9 and 10,

2017 while traveling from Charleston, South Carolina to Omaha, Nebraska on defendant

Greyhound Lines, Inc.'s ("Greyhound") commercial passenger bus. Lyman suffers from

cerebral palsy, and, as a result of her congenital disability, she has been wheelchair-

dependent for the majority of her life.

Lyman's first alleged injury occurred on the Atlanta, Georgia to St. Louis,

Missouri segment of her trip. According to Lyman, she was denied reserved priority

seating by Greyhound employees when boarding and required to travel in her

wheelchair. Greyhound employees positioned Lyman in an area of the bus designated

for wheelchair passengers but allegedly improperly secured her wheelchair to the bus

1

floor.  Twice during travel, she alleges, the straps used to secure her chair came loose.
In the first instance, her travel companion caught the chair before any collision.  In the
second instance, the unsecured row of folding seats behind Lyman slammed into
Lyman's wheelchair when the bus driver applied the brakes.  The momentum of the
folding seats pushed Lyman's wheelchair forward and pinned her against the row of
seats in front of her for approximately two hours.

Lyman's second injury occurred in St. Louis, Missouri when a Greyhound
employee, Willie Roberts ("Roberts"), allegedly attempted to re-board Lyman onto the
bus via the bus's platform lift system.  Lyman alleges that when the platform rose to the
level of the bus floor, Roberts pushed the front wheels of Lyman's wheelchair in an
attempt to roll the chair backwards onto the bus.  However, instead of guiding Lyman
onto the bus, the push caused the wheelchair to flip over backwards, which resulted in
Lyman hitting her head on the bus floor.  Lyman alleges damages in the range of
$1,137,191.38 to $1,169,163.65 in accrued and future medical expenses related to her
injuries.  ECF No. 111.

On May 8, 2020, Lyman filed the instant action against defendants, alleging
negligence, negligent hiring, and negligent training.  ECF No. 1, Compl.  The discovery
process in this action has been heavily litigated.  On December 14, 2021, Lyman filed a
fourth motion to compel.  ECF No. 91.  On January 5, 2022, Greyhound responded in
opposition, ECF No. 94, and on January 12, 2022, Lyman replied, ECF No. 95.

On January 25, 2022, Lyman filed her fifth motion to compel.  ECF No. 97.  On
February 8, 2022, Greyhound responded in opposition, ECF No. 106, and on February
15, 2022, Lyman replied, ECF No. 110.

On February 14, 2021, the court requested that Lyman provide supplemental briefing quantifying her damages.  Lyman filed that supplement briefing on February 18, 2022, ECF No. 111, and Greyhound responded to that filing on February 22, 2022, ECF No. 112.  The court held a hearing on both motions to compel on February 24, 2022.  ECF No. 115.  As such, the motions are now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.  "The scope and conduct of discovery are within the sound discretion of the district court."  Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must

be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

## III.  DISCUSSION

At issue are Lyman's fourth and fifth motions to compel. The court discusses each motion in turn and then addresses Lyman's request for an award of expenses.

### A.  Fourth Motion to Compel

In her fourth motion to compel, Lyman moves the court to compel defendants to provide complete responses to her Second Supplemental Interrogatory Nos. 1 and 3, and Second Supplemental Request for Production No. 3. The court discusses each request in turn below.

### 1.  Second Supplemental Interrogatory No. 1

Lyman first complains that defendants have not satisfactorily responded to her Second Supplemental Interrogatory No. 1. This request states:

> Identify all individuals who provided training on the operation of bus wheelchair accessibility and securement features to Greyhound employees at the Atlanta, Georgia terminal and at the St. Louis, Missouri terminal between January 1, 2016 and May 10, 2017.

ECF No. 91 at 6. Lyman explains that the filing of Second Supplemental Interrogatory No. 1 is a necessary consequence of Greyhound's failure to identify its employee(s) who secured the folding seats and her wheelchair in Atlanta. Absent Greyhound's identification of the Atlanta terminal employee(s) who secured Lyman's wheelchair and

4

the folding seats before departure, Lyman intends to depose the instructor who provided securement training to all Atlanta terminal employees.

Greyhound initially objected to the request in its entirety but eventually identified the instructor who provided Roberts, the bus driver who allegedly negligently boarded Lyman on the wheelchair lift, with training in 2016 and 2017. However, Greyhound continued to object to identifying any individuals who provided training to Atlanta employees, arguing that there is no rational connection between those Atlanta employees—or any training provided to them—and any claim or defense in this case. The parties explained during the hearing that they resolved the dispute over this interrogatory moments before the hearing—an all-too-common occurrence throughout this litigation. However, the parties raised the same issue of the relevance of the Atlanta injury in connection with Lyman's second motion to compel, ECF No. 32, directed at Lyman's First Supplemental Interrogatory No. 2. During the hearing on that motion, Greyhound represented that it was fully complying with the interrogatory and thereby avoided a written order on the issue. The court finds it particularly concerning that after such a representation of compliance, Greyhound has resurrected the same objection again in response to the instant motion. To avoid further back and forth on this issue, the court directly addresses it below notwithstanding the parties' supposed resolution of the matter for the second time.

Just like the first time it was raised, the court again finds Greyhound's argument regarding the relevance of the Atlanta injury disingenuous. Lyman's expressly alleges that her first injury occurred on the bus departing Atlanta, Georgia for St. Louis, Missouri. She alleges that she was denied reserved priority seating by Greyhound

employees when boarding in Atlanta and forced to travel in her wheelchair, that her wheelchair was improperly secured in Atlanta, and that she was injured in Tennessee when unsecured folding seat pushed her wheelchair forward and pinned her against the row of seats in front of her for approximately two hours. Greyhound argues that because Lyman does not allege any ongoing physical injury from this event, she cannot sustain a claim for that injury. However, Lyman's operative amended complaint alleges a negligence cause of action related to her first injury and identifies the damages associated with that injury as "injury to her shins, physical pain and suffering, mental anguish, emotional distress, and loss of enjoyment of life." Compl. ¶ 24. Lyman further pleads a negligent training cause of action that incorporates the allegations relating to her injuries on the Atlanta to St. Louis segment of her trip. Greyhound's challenge to the viability of Lyman's claims in its effort to evade discovery on that claim is specious. Greyhound has not moved the court to dismiss any claims relating to her first injury or moved for summary judgment on the same,[1] and therefore the negligence claims based on injuries allegedly suffered at the hands of Atlanta employees remain before the court. Under Federal Rule of Civil Procedure 26, Lyman is entitled to discovery on those claims. The court therefore overrules Greyhound's objections and compels Greyhound to fully respond to Second Supplemental Interrogatory No. 1.[2]

---

[1] Nor would filing those motions relieve Greyhound from its duty to provide discovery on those claims. Lyman has sufficiently alleged damages to survive a motion to dismiss, and any concession by Lyman or her counsel that she did not suffer any long-term physical injury does not entitle Greyhound to summary judgment on her claims in light of the other damages alleged. In other words, Lyman need not have suffered any long-term physical injury to be entitled to damages for her injury to her shins, physical pain and suffering, mental anguish, and emotional distress.

[2] The court is mindful that Lyman has not yet distinguished between the alleged monetary damages associated with her first injury and those related to her second injury.

### 2.  Second Supplemental Interrogatory No. 3

Lyman next requests that the court compel defendants to fully respond to her

Second Supplemental Interrogatory No. 3.  This interrogatory states,

> Identify all individuals who provided training on the operation of bus
> wheelchair accessibility and securement features to the drivers identified
> in Defendant's First Supplemental Answers to Plaintiff's First
> Supplemental Interrogatory No. 1.

ECF No. 91 at 7.  This interrogatory relates to the bus drivers previously identified by

Greyhound in discovery.  Greyhound has identified the bus drivers who drove Lyman on

the date of her alleged injuries: Roxie Toone-Gilchrist ("Toone-Gilchrist") as the driver

for the Atlanta to Nashville segment; Donal McClinton ("McClinton") as the driver for

the Nashville to St. Louis segment; and Kerry Taylor as the driver of the bus Lyman

boarded in St. Louis ("Taylor").  Because Lyman does not allege that she sustained any

injury on the Nashville to St. Louis segment of her travel where McClinton was the

driver, Lyman has modified this interrogatory to only seek the identifies of the

individuals who trained Toone-Gilchrist and Taylor.

Greyhound argues that neither Toone-Gilchrist nor Taylor have been identified

as having participated in any of Lyman's alleged injuries.  According to Greyhound,

Roberts is the only employee relevant to the facts alleged and thus the only employee

whose training is relevant.  Unsurprisingly, Greyhound again represented during the

---

To the extent Lyman continues to pursue discovery related to the first injury beyond the
requests contemplated in this order, the court is inclined to require Lyman to quantify
the damages attributable to her first injury so that the parties and this court can
determine the proportionality of those requests.  However, the court rejects Greyhound's
wholesale attempt to avoid any discovery related to the first injury and likewise will
reject any argument that such discovery is an undue burden because of deficiencies in
the search functionality or organization of Greyhound's record-keeping system.

hearing that this dispute had been resolved and that Greyhound ultimately provided the requested material.  Again, to put the matter to rest, the court addresses the argument underlying Greyhound's objections nonetheless.  Toone-Gilcrest is the driver who allegedly conducted the pre-trip inspection of the bus in Atlanta and who attempted to re-secure Lyman's wheelchair during travel through Tennessee shortly before her first injuries.  The court has already determined that Lyman's first alleged injury remains relevant, and, accordingly, Toone-Gilcrest's training related to wheelchair securement and safety inspections is plainly relevant.  Taylor has been identified as the driver of the bus on which Lyman was allegedly injured when her wheelchair flipped while boarding in St. Louis.  Although Lyman does not allege that Taylor participated in boarding Lyman or flipping her wheelchair, she alleges that Greyhound bus drivers' duties include assisting passengers during boarding and assisting with operating the wheelchair lift and that Taylor failed to do both.  Therefore, the court is satisfied that Taylor's training is also relevant and overrules Greyhound's objections.

### 3.  Second Supplemental Request for Production No. 3

Finally, Lyman requests that the court compel Greyhound to fully respond to Second Supplemental Request for Production No. 3.  This production request seeks,

> The employee personnel files of the Greyhound employee drivers identified in Defendant's First Supplemental Answer to Plaintiff's First Supplemental Interrogatory No. 1, including any and all documents related to training, job performance, and work-related disciplinary actions.

ECF No. 91 at 7.  In addition to the relevance objections to information pertaining to the drivers discussed and rejected supra, Greyhound argues that employees' personnel files are not discoverable because they contain personal, sensitive, and confidential

8

information, including an employee's health history, daily schedule and activities, and financial affairs.

District courts within the Fourth Circuit have concluded that public disclosure of the contents of personnel files, including employee performance reviews, invoke privacy and public policy concerns. See, e.g., Marlow v. Chesterfield Cnty. Sch. Bd., 2010 WL 3660770, at *5 n.4, *6 n.5 (E.D. Va. Sept. 15, 2010); Cason v. Builders FirstSource-Se. Grp., Inc., 159 F. Supp. 2d 242, 247–48 (W.D.N.C. 2001). However, countervailing interests must be considered. The scope of discovery must be broad in order to provide both sides with all the information necessary for proper and full exploration of all the relevant issues, as well as to eliminate surprise and to facilitate settlement. Hickman v. Taylor, 329 U.S. 495, 507–508 (1947). As such, although not covered by a per se privilege, personnel files are normally only subject to discovery in connection with an appropriate protective order. See Cason, 159 F. Supp. 2d at 247 (ordering production of personnel files only after appropriate protective order was entered); Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105–06 (E.D.N.C. 1993) (same).

The confidentiality order in this case, ECF No. 21, adequately protects the privacy concerns implicated by the personnel files. Under the confidentiality order, "[d]ocuments designated CONFIDENTIAL under this Order shall not be used or disclosed . . . for any purposes whatsoever other than preparing for and conducting the litigation in which the documents were disclosed." Id. at 2. Greyhound fails to convince the court that it requires any more protection for these documents than what is already provided for by the confidentiality order. Moreover, Greyhound exclusively cites cases outside of the Fourth Circuit for the proposition that Lyman must make a

heightened showing of relevance and need to obtain the personnel files.  In any event, the court finds the personnel files sufficiently relevant to warrant production.  Lyman alleges that the acts and omissions of Toone-Gilchrist and Taylor gave rise to her injuries, and their personnel files are likely to reflect their training, experience, work record, and qualifications that bear on Lyman's negligence, negligent hiring, negligent supervision, and negligent training claims.

During the hearing, counsel for Greyhound agreed to produce portions of the personnel files relating to training, job performance, and disciplinary actions based on actions the court has previously found relevant—namely, improper handling of wheelchair-bound passengers, which includes improper seating, securement, lifting, or pushing of such passengers and their wheelchairs.  While counsel for Lyman agreed to Greyhound's redaction of certain irrelevant and sensitive personal information, he argued during the hearing that Greyhound's proposed limitation on the scope of discoverable disciplinary actions is too restrictive and excludes relevant disciplinary actions.  For example, counsel for Lyman posited that an employee's disciplinary action for being intoxicated on the job bears on Lyman's negligent supervision claims regardless of whether that particular incident resulted in injury to passengers.  The court agrees that Greyhound's proposed limitation on disciplinary actions is overly narrow and thus compels Greyhound to produce all disciplinary records for the requested employees.

Greyhound alternatively argues that if the court orders production of the personnel files, the contents therein should be limited to five years prior to the alleged incident.  The court again disagrees.  "Negligent hiring cases 'generally turn on two

10

fundamental elements—knowledge of the employer and foreseeability of harm to the public.'" Kase v. Ebert, 707 S.E.2d 456, 459 (S.C. 2011) (quoting Doe v. ATC, Inc., 624 S.E.2d 447, 450 (S.C. 2005)).  Information available at the time of hiring and over the course of the drivers' employment—including the drivers' qualifications, performance reviews, and disciplinary actions—directly bear on the issue of Greyhound's knowledge of whether Toone-Gilchrist and Taylor posed a foreseeable risk of harm to its customers.  To the extent the two drivers at issue were hired more than five years before the date of Lyman's alleged injuries, imposing such a time limitation on discoverable personnel files would block Lyman's access to evidence necessary to prove, at the very least, her negligent hiring claim.  Therefore, Greyhound must produce the personnel files, including information dated more than five years prior to Lyman's injuries, subject to the agreed-upon redactions and/or exclusion of irrelevant and sensitive personal information.  Moreover, the court orders Greyhound to provide Lyman a log containing descriptions of any redactions made or documents withheld that is sufficiently specific to allow for meaningful analysis and the opportunity to challenge the same.

### B.  Fifth Motion to Compel

In her fifth motion to compel, Lyman requests that the court compel defendants to fully respond to the supplemental requests for production that accompanied her notice of Greyhound's deposition under Federal Rule of Civil Procedure 30(b)(6) (the "NOD Requests").  Lyman served her notice of a Rule 30(b)(6) deposition on November 10, 2021, and that deposition was conducted on January 18, 2022.  Each disputed NOD Request and the objection thereto is discussed below.

### 1. NOD Request No. 1

NOD Request No. 1 seeks,

> All documents that G[reyhound] has not already provided to [Lyman] that refer or relate in any way to the matters upon which examination will be taken as set forth in Exhibit A to the Notice of Deposition accompanying this request.

ECF No. 97-3 at 2. Greyhound objects to this request, asserting that it is overly broad and seeks the mental impressions of counsel. Greyhound explains that Lyman's notice of deposition designated thirteen topics, and a broad request seeking all documents that relate in any way to these matters is not specific enough for Greyhound to know what precise documents Lyman seeks. Greyhound argues that the broad request effectively calls for the mental impressions of counsel because it would have to make a determination in its legal judgment as to which documents relate to Lyman's thirteen requests. Greyhound equates this broad request to a party, at the outset of litigation, making a generic discovery request for all documents that bear on the plaintiff's claims. The court agrees that this request is overly broad but finds the issue moot in light of Lyman's other NOD Requests that specifically identify the documents requested. During the hearing, counsel for Lyman conceded the point, and therefore the court finds the motion to compel a response to this request moot and declines to compel Greyhound to further responds to NOD Request No. 1.

### 2. NOD Request No. 2

NOD Request No. 2 seeks,

> The complete Greyhound Lines, Inc. employee personnel file for each person designated by G[reyhound] to provide testimony in this case under FRCP Rule 30(b)(6).

ECF No. 97-3 at 2. Greyhound objects to this request as irrelevant. Greyhound designated Alan Smith ("Smith"), its Director of Safety, to testify on its behalf. Greyhound argues that Lyman does not have the right to discovery on the Rule 30(b)(6) designee's personal job responsibilities because Greyhound's Rule 30(b)(6) designee is not a witness (nor was he deposed) in his capacity as an employee of Greyhound. Greyhound maintains that "[t]he designee is simply the representative of G[reyhound], and G[reyhound], quite obviously, does not have a personnel file." ECF No. 106 at 9.

Lyman argues that Smith's personnel file is relevant both substantively and for impeachment purposes. Lyman maintains that Smith, as Greyhound's Director of Safety, has overseen the company's employee training program since 2009. Therefore, documents in his personnel file, including qualifications, performance evaluations, and work record, will reflect whether Greyhound negligently hired, supervised, or trained its employees and may weigh on whether Greyhound failed to implement and oversee an effective employee training program, which Lyman alleges was a foreseeable proximate cause of her injuries. Moreover, Lyman asserts that she may call Smith at trial to testify in his personal capacity. Accordingly, she maintains that she will use information contained in his personnel file to examine his competence, credibility, and bias as a witness. Counsel for Lyman agreed during the hearing to redactions of health and other sensitive information that the parties agree are clearly irrelevant.

The court finds Smith's personnel file relevant. See U.S.E.E.O. v. McCormick & Schmick's Seafood Rests., 2012 WL 3563877, at *4 (D. Md. Aug. 12, 2012) ("Personnel files may also be discoverable if they contain information useful for impeachment."); Templeton v. The Bishop of Charleston, 2021 WL 5990991, at *5–6

(D.S.C. Apr. 13, 2021) (denying a motion for a protective order where the plaintiff argued the witness's personnel file was not confidential and was relevant to credibility, biases, and impeachability at trial). At the very least, a Rule 30(b)(6) designee's statements are subject to impeachment much like those of a fact witness, and the personnel files may include information relevant to such impeachment. See United States v. Taylor, 166 F.R.D. 356, 362 n.6 (M.D.N.C. 1996) ("When the Court indicates that the Rule 30(b)(6) designee gives a statement or opinion binding on the corporation, this does not mean that said statement is tantamount to a judicial admission. Rather, just as in the deposition of individuals, it is only a statement of the corporate person which, if altered, may be explained and explored through cross-examination as to why the opinion or statement was altered."). Therefore, the court compels Greyhound to produce Smith's personnel file, subject to the parties' agreement on redactions and/or the exclusion of irrelevant and sensitive information.

### 3. NOD Request No. 4

NOD Request No. 4 seeks "[t]he complete Greyhound Lines, Inc. employee personnel file for the [Americans with Disabilities Act ("ADA")] Compliance Manager employed by G[reyhound] on May 10, 2017." ECF No. 97-3 at 2. Greyhound was required to hire an ADA Compliance Manager pursuant to a consent decree entered with the United States Department of Justice ("DOJ") in 2016 (the "Consent Decree"). According to Lyman, the Consent Decree required the ADA Compliance Manager to be knowledgeable of Title III of the ADA and its accompanying regulations contained in 49 C.F.R. Parts 37 and 38. The Consent Decree also allegedly required the ADA Compliance Manager to conduct a complete review of Greyhound's existing policies to

14

ensure compliance with regulatory obligations detailed therein and recommend implementation of new policies in the event of non-compliance.

On February 8, 2022, after objecting to the request and after Lyman brought the instant motion to compel, Greyhound produced certain "relevant" portions of the personnel file for ADA Compliance Manager Kira Walker, including Walker's application, her offer of employment, her offer acceptance letter, a personnel action form, a performance review, an acknowledgement of employee handbook, her resignation letter, and Greyhound's announcement of her separation from the company in 2019.  Greyhound argues that it asked Lyman to identify the kinds of documents she sought from the personnel files, and it only became aware that Lyman sought documents such as employee performance reviews, work reports, reprimands, hiring deliberations, and training records once Lyman filed the instant motion.  Greyhound's argument in this regard is tenuous at best.  The request for personnel files was sufficiently specific such that Greyhound should have known by that request that Lyman sought the aforementioned documents.  Regardless, Greyhound now claims that it has submitted the relevant documents to Lyman with certain redactions.  As discussed under Second Supplemental Request for Production No. 3, the court orders Greyhound to provide Lyman with a description of the information that has been redacted from the personnel file.

### 4.  NOD Request No. 8

NOD Request No. 8 seeks,

All documents, memoranda and correspondence in any way pertaining to Greyhound's hiring, and the United States' approval, of an ADA Compliance Manager as required under the Consent Decree entered in United States v. Greyhound Lines, Inc., No. 1:16-cv-0067.

ECF No. 97-3 at 3.  The dispute over this request likewise appears to have been resolved after Lyman filed her motion to compel.  Lyman took issue with the fact that Greyhound asserted it is not "presently in possession of responsive documents" but "to not foreclose on the possibility of identifying responsive documents, [Greyhound]'s investigation is continuing.  It will supplement this Response if any responsive documents are identified."  ECF No. 97-7 at 7.  Since making this statement, Greyhound identified Walker's job application, offer letter, and acceptance letter.  Greyhound concedes that none of the three have any substantive relation to the deliberations pertaining to Walker's hiring or her qualifications.  Nonetheless, out of an abundance of caution, Greyhound produced these documents on February 8, 2022.  Greyhound submits that no other responsive documents exist due to Greyhound's records retention policy and has provided an affidavit from its legal department affirming the same.  The court finds that Greyhound's response, supported by an affidavit, sufficiently responds to the request, and during the hearing, Lyman agreed.  Therefore, the dispute over this request is now moot.  The court orders Greyhound to timely provide Lyman with similar affidavits going forward to the extent it maintains documents cannot be located.

### 5.  NOD Request No. 10

NOD Request No. 10 seeks,

> All documents, memoranda and correspondence in any way pertaining to Greyhound's compliance and non-compliance with any provision of the Consent Decree entered in <u>United States v. Greyhound Lines, Inc.</u>, No. 1:16-cv-0067 related to the operation of wheelchair lifts and wheelchair securement devices.

ECF No. 97-3 at 3. Greyhound maintains that responsive documents do not exist, and Lyman challenges that assertion.  Greyhound argues that the Consent Decree did not

concern injury to passengers, including personal injury incidences related to the operation of wheelchair lifts and securement devices. It also maintains that the typical record retention policy for these documents is one year, as Smith, the Director of Safety, testified. Lyman argues that it is implausible that Greyhound would not possess any correspondence with the DOJ or internal documentation regarding Greyhound's policies for safely operating wheelchair lifts and securement devices to comply with the terms of the Consent Decree. She argues that the Consent Decree contained several obligations explicitly dealing with the safe operation of wheelchair lifts and securement devices. ECF No. 97-8 ¶¶ 6, 7, and 10. The Consent Decree also required Greyhound to ensure that all its employees were provided "Technical Training" on the operation of wheelchair lifts and securement devices by at least April 30, 2016. Id. ¶ 23. Therefore, Lyman argues that, unless it has been destroyed, documentation, including correspondence with the DOJ, must exist regarding these compliance efforts. She accordingly asks the court to require Greyhound to provide an affidavit detailing the efforts they took to locate these documents.

During the hearing, counsel for Greyhound explained that the Consent Decree expired in January 2019, and therefore all relevant documents are no longer in existence pursuant to Greyhound's one-year document retention policy. Moreover, general counsel confirmed that any relevant documents that fall outside of the one-year retention policy—such as personal injury complaints that Greyhound maintains for five years— have been produced. The court orders Greyhound to provide an affidavit to this effect. Additionally, to the extent Greyhound withheld any documents relating to training rather than personal injury, the court finds those documents relevant and orders their

17

production or, alternatively, an affidavit noting that the documents do not exist and detailing the efforts taken to make that determination.

### 6. NOD Request No. 12

NOD Request No. 12 seeks,

> All documents, memoranda and correspondence in any way pertaining to the firing of Greyhound employees that were in any way involved in incidents where wheelchair-dependent customers allegedly sustained injury during the usage of wheelchair lifts and wheelchair securement devices on Greyhound buses.

ECF No. 97-3 at 3. Greyhound initially objected to the request, explaining that responsive documents have been produced and that it is unable to search for documents based on the reason for an employees' termination. Lyman rebuts that no responsive documents have been produced at all and that Greyhound should bear any additional burden caused by its failure to maintain organized records.

In its response, Greyhound asserts that despite the heavy burden it imposes, Greyhound has formulated a means of locating the requested information, if there is any to be located. Greyhound's Labor Relations team is in the process of identifying any employee terminated as a result of any ADA violation. Greyhound will then review any identified terminations for any violations related to injuries during the usage of wheelchair lifts and wheelchair securement devices. It argues that this task is not simple, and it will supplement its response to this NOD Request with a statement of its findings upon completion. Greyhound additionally objects to providing all documents, memoranda, and correspondence pertaining to those terminations because such detailed information, if it exists, is overly broad and irrelevant to Lyman's claims.

The court agrees with Lyman.  "Defendant may not excuse itself from compliance with [discovery] . . . by utilizing a system or record-keeping which conceals rather than discloses relevant records, or makes it more difficult to identify or locate them, thus rendering the production of documents an excessively burdensome or costly expedition."  Ashmore v. Allied Energy, Inc., 2016 WL 2898007, at *4 (D.S.C. May 18, 2016) (quoting Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976)).  Because parties choose their own record-keeping system to access information in the ordinary course of business, they should be held responsible for difficulties encountered in producing the same information in discovery.  Stout v. Wolff Shoe Co., 2007 WL 1034998, at *2–3 (D.S.C. Mar. 31, 2007); Columbia Chems. Co. v. AIG Specialty Ins. Co., 2015 WL 12755711, at *5 (N.D. W. Va. Sept. 18, 2015) (holding that the corporate defendant could not "shirk its discovery obligations because the filing system it created makes finding documents an arduous task").  Moreover, the court has already held that past similar incidents are relevant to Greyhound's notice of any deficiencies in its training procedures and therefore relevant to Lyman's negligent training and supervision claims.  See ECF No. 29 at 4–6 (finding that discovery of prior similar incidents resulting in injury were relevant to Lyman's claim of negligent training and supervision).  Greyhound's objection directly contradicts the court's order.  Nevertheless, the parties represented to the court that they resolved their dispute over this request and Lyman had received an acceptable affidavit addressing this request by the time of the hearing, rendering the motion moot in this respect.

### 7.  NOD Request No. 13:

NOD Request No. 13 seeks,

> Copies of all lawsuits filed against G[reyhound] between May 10, 2012, and May 10, 2017, alleging injury of a G[reyhound] wheelchair-reliant customer while utilizing wheelchair lifts and wheelchair securement devices.

ECF No. 97-3 at 4. Greyhound responded to this request by stating that copies of lawsuits were mixed in with its production of prior similar incident reports. Greyhound explained that it produced all claims files alleging injury of a Greyhound wheelchair-bound customer while utilizing wheelchair lifts and/or wheelchair securement devices. It further explained that if a claimant brought a lawsuit, that lawsuit was identified as part of the claim file. As such, information pertaining to all lawsuits between May 10, 2012 and May 10, 2017 alleging injury of a Greyhound wheelchair-reliant customer while utilizing wheelchair lifts and/or wheelchair securement devices have already been produced to Lyman. Greyhound also objected on the ground that NOD Request No. 13 is irrelevant, overly broad, unduly burdensome, and intended to harass.

Greyhound's argument that the request is irrelevant lacks merit. Again, the court has already ruled that prior similar incidents are relevant, and similar lawsuits are likewise relevant and discoverable. See, e.g., Deitz v. Pilot Travel Ctrs., LLC, 2015 WL 5031229, at *2 (S.D. W. Va. Aug. 25, 2015) ("Courts in this circuit and in sister circuits have held that discovery related to other accidents, incidents, claims and lawsuits involving a party to the litigation is relevant to a personal injury action when the discovery is reasonably designed to lead to admissible evidence on issues such as notice, knowledge, foreseeability, standard of care, and damages."). The fact that Greyhound eventually identified only three lawsuits likewise undermines its argument that the request was overly broad or unduly burdensome. Greyhound complains that it took counsel approximately eight hours to review the previously produced documents to

20

identify these lawsuits.  However, it appears to the court that Greyhound's filing

system—not Lyman—was the root of counsel's difficulties in locating responsive

documents and his frustration with the document review process.  It was not Lyman's

responsibility to search public records for these cases based on the claim files produced.

As Lyman explained, Greyhound had not explicitly stated that all copies of lawsuits

stemming from prior similar incidents had been produced, and Lyman was not required

to cross-reference the claim files produced with the public record to determine the

relevant lawsuits filed against Greyhound and ensure that list was comprehensive.  See

Att'ys Liab. Protection Soc'y, Inc. v. Wooddy, 2013 WL 11328456, at *4 (D.S.C. Oct.

1, 2013) (fact that filed documents were equally available from a public source had no

bearing on the defendants' duty to produce material in their possession, custody, or

control).  Indeed, while Greyhound states in its response that it previously produced the

complaint for two of the three relevant lawsuits it now has identified, it notably did not

state that the same was true with respect to the third lawsuit.  As the court has explained,

the burden of producing discoverable information in its possession falls squarely on

Greyhound's shoulders, and it may not shirk that duty by demanding that Lyman search

for relevant documents in the public record.  In any event, Greyhound has, yet again,

indicated its intent to comply during the hearing, and the parties agreed to a deadline

during the hearing for production of an affidavit detailing the steps taken to locate

responsive documents and the materials located by Greyhound or its third-party personal

injury claims handler.

### 8.  Redacted ADA Training Material

Finally, Lyman takes issue with Greyhound's redactions of a manual entitled "Americans with Disabilities Act Best Practices Guide," dated April 2012, and a slideshow entitled, "Serving Customers With Disabilities," which appears to have been dated 2015.  The court has previously noted that the unilateral redaction of non-responsive information is a disfavored practice in this district.  See In re MI Windows and Doors, Inc., 2013 WL 268206, at *2 (holding that outside of the limited circumstances provided in Fed. R. Civ. P. 5.2, "a party should not take it upon . . . itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case").  However, the court has also repeatedly stressed that Lyman is not entitled to broad discovery into Greyhound's compliance with the ADA.  ECF No. 79 at 16–17 ("The court has repeatedly ordered that Lyman cannot rely on the applicability of a select few ADA regulations to justify carte blanche discovery into Greyhound's compliance with the ADA.").  Greyhound explains that the ADA Best Practices Manual, as the name suggests, contains content related to the wide breadth of the ADA and that is irrelevant to the case at hand.  Moreover, Greyhound explains that it left unredacted the manual's table of contents so that Lyman may correlate the redactions with the subject matter that was redacted.  For example, Greyhound redacted the section "Assisting Passengers with Vision Impairments" and other ADA topics unrelated to the claims at issue.  Lyman has not cited any particular section within the manual that she believes was improperly redacted, and therefore the court finds that Greyhound's provision of the redacted ADA materials strikes a proper balance between adhering to the court's prior orders limiting discovery into the ADA and permitting

discovery on those specific sections of the ADA regulations that relate to this action. Therefore, the court denies the motion with respect to this issue. However, during the hearing, Greyhound confirmed that it had not provided any similar index or explanation of its redactions to the slideshow entitled, "Serving Customers With Disabilities," and therefore, the court orders Greyhound to provide a description of the information redacted to Lyman within fourteen days of this order.

### C. Expenses

Lyman additionally requests that the court award her expenses related to filing her second, third, fourth, and fifth motions to compel. The court granted both the second and third motions to compel from the bench during the hearing on the motions, see ECF No. 77, but held the request for an award of expenses in abeyance to determine whether Greyhound's faults had sufficiently accumulated to justify such an award.

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides:

> If [a] motion [to compel discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must . . . require the party whose conduct necessitated the motion, or the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

However, the court should not order payment of expenses if the opposing party's nondisclosure, response, or objection was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii). "If the motion [to compel] is granted in part and denied in part, the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); see also Stephenson v. Pfizer Inc., 2014 WL 3385213, at *2 (M.D.N.C. July 9, 2014) ("Rule 37(a)(5)(C) effectively incorporates the substantive standards of

Rule 37(a)(5)(A), in that expenses of a discovery motion may be imposed upon a party ordered to produce discovery where that party's conduct necessitated the motion unless the nondisclosure or objection was substantially justified or other circumstances make an award of expenses unjust." (internal citation and quotation marks omitted)).

The court finds Greyhound's pattern of discovery abuse sufficiently egregious to warrant an award of expenses. To be sure, the sheer number of motions to compel filed in this case could, in theory, be indicative of discovery misconduct. Here, however, at least four of the five motions to compel have overwhelmingly been resolved in Lyman's favor. Lyman's second motion to compel identified several discovery requests that were directly relevant to this action and to which Greyhound had failed to respond. For most of these requests, Greyhound simply noted that it could not locate the information and that its investigation was continuing. Lyman was forced to bring motions to compel, fully brief the same, and attend hearings on the matters before counsel for Greyhound agreed during the hearing that it would comply with the requests or provide definitive responses that the requested information was unavailable within a certain deadline.

The crux of Lyman's third motion to compel was that Greyhound was taking advantage of the fact that the court did not include a compliance deadline in its February 24, 2021 discovery order, ECF No. 29, which granted in part and denied in part Lyman's first motion to compel, ECF No. 17. Lyman argued that Greyhound improperly interpreted the absence of a set deadline in that order as permission to unreasonably delay the production ordered by the court. Lyman further complained that Greyhound improperly redacted the documents it had produced to date and failed to timely file a privilege log. Therefore, Lyman requested that the court compel Greyhound to fully

comply with the court's order within ten days, produce all documents withheld or redacted as nonresponsive or protected by the work product doctrine or attorney-client privilege, and award her attorney's fees. As usual, during the hearing, Greyhound expressed that compliance had been laborious but that it either had complied by the date of the hearing or would comply with the outstanding discovery requests by September 14, 2021. Nevertheless, Lyman explains that Greyhound belatedly produced only some of the compelled documents on November 23, 2021, see ECF No. 91 at 5 n.1, after being served with a Federal Rule of Civil Procedure 11 letter, and Greyhound produced additional compelled documents on December 22, 2021, after Lyman brought these documents to issue in her fourth motion to compel, see id. at 15–16.

With respect to the fourth motion to compel, Greyhound provided its discovery responses twenty-three days after the extended response deadline granted by Lyman. After having roughly sixty days to gather all responsive documents and information, Greyhound's responses consisted of objections which, as discussed supra, lacked legal or factual justification. With respect to the fifth motion to compel, many of Greyhound's objections again lacked substantial justification, particularly in light of the striking number of eleventh-hour concessions it made to comply and provide the requested discovery.

Greyhound has undoubtedly exhibited a pattern of belated compliance only after being faced with imminent court action. Greyhound's modus operandi of objecting to Lyman's discovery requests, only to concede after the parties have engaged in the elaborate song and dance of motions practice, is not only a waste of the parties' and the court's resources, but also suggests that Greyhound has not taken its discovery

obligations seriously.[3]  It is certainly clear that production has been difficult for

Greyhound based on its record-keeping system.  However, as the court has explained

above, Greyhound's trouble navigating its own record-keeping system is of its own

making, and Greyhound should fully bear the additional expense associated with the

discovery process because of that system.  Those expenses include the attorney's fees

Lyman has incurred in repeatedly seeking court involvement to compel Greyhound to

timely produce responsive material or provide a definitive statement that documents do

not exist.  Instead, it seems Greyhound's knee-jerk reaction is to object to relevant

discovery requests that it has trouble locating in order to avoid the costs of procuring

this information.  Based on the information before it, the court is particularly concerned

that Greyhound seems to be intentionally complicating and prolonging the discovery

---

[3] For example, Lyman's fourth motion to compel initially requested that the court compel production of the operation and maintenance manuals for the Greyhound bus and wheelchair lift on which she was injured.  However, Greyhound noted in its response that it had since complied and produced those materials, rendering the motion to compel moot in that regard.  These materials were also at issue in Lyman's second motion to compel, ECF No. 32 at 5, and Greyhound represented to the court that it would produce the same by September 15, 2021 at the August 16, 2021 hearing.  After that hearing, Greyhound explained to Lyman that it was unable to locate the responsive documents after further review.  See ECF No. 91-5 at 3–4.  After being confronted with information conflicting with this response, id., Greyhound attempted to justify its failure to comply by asserting that the manuals were not relevant and were publicly available or available by independent means.  ECF No. 91-10 at 2–3.  Greyhound had—and missed—its opportunity to have those objections addressed in the hearing on the second motion to compel.  Rather than pursue those objections at the appropriate time after the parties had briefed and the court was prepared to hear the same, Greyhound indicated its intent to comply and thus avoided a written order from this court on the issue. Greyhound's about-face on its representation of compliance and attempt to later re-raise those objections were entirely inappropriate, a waste of party and judicial resources, and just one example of the undue delay it has effectuated on the discovery process. Greyhound likewise objected to the relevance of Lyman's injuries in Atlanta in response to requests in Lyman's second motion to compel, seemingly abandoned that objection in the August hearing by indicating its intent to comply, only to resurrect that objection in response to the fourth motion to compel.

process to drain Lyman's resources or strong-arm her into accepting its withholding of clearly relevant evidence.  For example, Greyhound's constant assertion that it cannot locate responsive documents and that its investigation continues has been particularly troubling.  Lyman is entitled to timely responses to her discovery requests and need not submit to an indefinite discovery period, regardless of how expansive, unorganized, or unsearchable Greyhound's document system may be.  Likewise, when documents do not exist, Lyman is entitled to definite statements to that effect within a reasonable period of time and without court involvement.  Greyhound has on far too many occasions failed to timely provide such statements on its own accord.  As Lyman points out, "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only to be revealed after so many false guesses and so much money is squandered." ECF No. 91 at 18 (citing Stephonson v. McCoy, 2018 WL 671500, at *1 (D.S.C. Feb. 2, 2018)).  Therefore, the court finds appropriate an award of Lyman's attorney's fees in connection with the second, third, and fourth motions to compel.  Because the court granted in part and denied in part the fifth motion to compel, the court will award Lyman fifty percent of her attorney's fees for that motion to compensate for only the discovery requests to which Greyhound objected without substantial justification.

### D.  Reasonableness of Attorney's Fees

Having determined that an award of attorney's fees is warranted, the court now turns to the reasonableness of Lyman's requested fees.  At the court's request, counsel for Lyman submitted a declaration calculating the attorney's fees Lyman incurred in connection with her second through fifth motions to compel for the court's consideration.  ECF No. 116.  Lyman's counsel affirmed that fees were incurred in the

amount of: (a) $3,540.00 for the preparation and filing of Lyman's second motion to compel and corresponding reply; (b) $7,120.00 for the preparation and filing of Lyman's third motion to compel and corresponding reply; (c) $2,822.50 for miscellaneous work associated related to both the second and third motions to compel; (d) $5,747.50 for the preparation and filing of Lyman's fourth motion to compel and corresponding reply; (e) $5,845.00 for the preparation and filing of Lyman's fifth motion to compel and corresponding reply; and (f) $2,925.00 for miscellaneous work associated with both the fourth and fifth motions to compel. Accordingly, the total fees Lyman requests associated with her second, third, fourth, and fifth motions to compel are $28,000.00.

To assess attorneys' fees, courts compare the requested amount to the "lodestar" amount. Robinson v. Equifax Info. Serv's., LLC, 560 F.3d 235, 243 (4th Cir. 2009). The lodestar amount equals the reasonable hourly rate multiplied by hours reasonably expended. Id. (citing Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). District courts evaluate the reasonableness of both rates and hours through twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243–44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). In exercising its discretion, the court need not rigidly apply each factor. Grayson Consulting, Inc. v. Cathcart, 2013 WL 436217, at *2 (D.S.C. Feb. 5,

2013); see also PRA Fin. Servs., LLC v. Autotrakk, LLC, 2018 WL 1472490, at *3
(E.D. Va. Mar. 26, 2018). The court considers each of the factors below.

### 1. Time and Labor Expended

Lyman's counsel testifies that ninety-five hours were incurred by Cameron L.
Marshall ("Marshall"), attorney, and twenty-five hours by Alec N. Zarif, legal assistant,
in connection with the four motions to compel. Counsel for Lyman affirmed that these
time records were maintained on a daily basis. In light of the number of motions, the
number of discovery requests at issue in each motion, and the corresponding briefing,
courtroom appearances, and preparation required in bringing the motions, the court finds
Lyman's counsel's time as reported in the affidavit and declaration reasonable.

### 2. Novelty and Difficulty of Questions Raised

The matter underlying the fee request—a discovery dispute—does not entail
particularly novel or difficult questions.

### 3. Skill Required

Given the amount at stake, Lyman has retained counsel with specialized
experience in this jurisdiction and substantive area of law.

### 4. Preclusion of Other Employment Opportunities

The court finds that this factor does not affect the calculation of the instant fee
award.

### 5. Customary Fee for Like Work

In his affidavit and declaration, Marshall affirms that he charges a rate of
$275.00 per hour and his legal assistant charges a rate of $75.00 per hour. Prior cases in
this district support the reasonableness of Marshall's rates. See, e.g., W.S. v. Daniels,

2019 WL 5448374, at *4–5 (D.S.C. Oct. 24, 2019) (finding that rates ranging from $275 per hour to $400 per hour fell within the range of reasonableness); Ellington v. Hayward Baker, Inc., 2019 WL 4058967, at *4–5 (D.S.C. Aug. 28, 2019) (using hourly rates of $350 per hour and $300 per hour).  Federal courts in this district have also found similar rates for legal assistants to be reasonable.  See, e.g., Allora, LLC v. Cambridge Builders of Johnston Cnty., Inc., 2012 WL 12884740, at *3 (E.D.N.C. Sept. 27, 2012), aff'd, 532 F. App'x 349 (4th Cir. 2013) (finding that a rate of $75 per hour for a legal assistant was reasonable); Trustees of the Nat'l Elec. Benefit Fund v. Trademark Elec., Inc., 2021 WL 5149806, at *4 (D. Md. Nov. 5, 2021) (finding a rate of $139.00 per hour for a legal assistant reasonable).  Marshall is a solo-practitioner, and, accordingly, the court finds the work of his legal assistant reasonably necessary to his services in connection with the motions at issue.  Counsel for Lyman likewise affirms that his rates and those of his assistant are within the prevailing market rate for similar legal services.  The court is thus satisfied that the rates fall within the range of reasonableness.

### 6.  Attorney's Expectations at the Outset of Litigation

The court finds this factor insubstantial in the instant case.

### 7.  Time Limitations Imposed by the Client or Circumstances

This factor does not affect the court's fee calculation.

### 8.  Amount in Controversy and the Results Obtained

As noted above, Lyman alleges damages in the range of $1,137,191.38 to $1,169,163.65.  However, Lyman seeks attorneys' fees in connection with discovery motions.  No judgment has been entered.  Therefore, this factor does not weigh heavily on attorney's fees.

### 9.  Experience, Reputation, and Ability of the Attorneys

Marshall graduated from the University of South Carolina School of Law in 1991 and was admitted to the South Carolina Bar that same year.  He is admitted to practice in the state and federal courts of South Carolina and in the Fourth Circuit Court of Appeals.  He represented the State of South Carolina in criminal matters as an Assistant Solicitor from 1991 to 2000.  From the year 2000 to present, Marshall has worked as a solo-practitioner handling both criminal defense and personal injury cases. He has represented approximately 750 injured clients in a wide variety of cases in both state and federal court.  The court finds that Marshall's experience, reputation, and ability align with the rates charged.

### 10.  Undesirability of the Case Within the Legal Community

This factor does not significantly affect the instant fee calculation.

### 11.  Nature and Length of the Professional Relationship

This factor does not affect the court's fee calculation.

### 12.  Attorneys' Fees Awards in Similar Cases

As previously discussed, the hourly rates Lyman has provided accord with rates recently determined reasonable by courts in this district and others.

Accordingly, the court finds the rates and hours charged in connection with the four motions to be reasonable and awards an amount of $25,077.50.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Lyman's fourth motion to compel, **GRANTS IN PART AND DENIES IN PART** Lyman's fifth motion to compel, and **AWARDS** Lyman $25,077.50 in expenses.

31

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 14, 2022**
**Charleston, South Carolina**